Robert MARGIN, Plaintiff-Appellant,

v.

SEA–LAND SERVICES, INC., et al.,
Defendants-Appellees.

No. 85–3542.

United States Court of Appeals,
Fifth Circuit.

March 19, 1987.

Rudolph R. Schoemann, New Orleans, La., for plaintiff-appellant.

Donald L. King, New Orleans, La., for Cooper Stevedoring Co., Inc.

James K. Carroll, Therese B. Forrester, New Orleans, La., for Sea Land.

Before CLARK, Chief Judge,
GOLDBERG, and GEE, Circuit Judges.

CLARK, Chief Judge:

A suit under 33 U.S.C. § 905(b) for injuries sustained by a welder while he was working on a dock was dismissed by the district court at the conclusion of the plaintiff's case on the ground that the court lacked subject matter jurisdiction. Finding that no maritime jurisdiction over the plaintiff's claims under the Admiralty Extension Act, 46 U.S.C. § 740, was properly alleged, we affirm.

I.

Robert Margin was employed as a welder/fitter by the Boland Marine and Manufacturing Corporation, which does ship repair work in the New Orleans area. On July 5, 1983, he was assigned to do repair work at the Sea-Land dock in New Orleans. At that time cargo operations at the terminal were under the control of Cooper Stevedoring Company (Cooper), which was in charge of discharging containers and stacking frames and hatch covers. After Margin arrived at the dock, he was assigned to do repair work aboard the M/V BOSTON, a vessel owned and operated by Sea-Land Services, Inc. (Sea-Land). Later in that shift, he was assigned to the dock area to repair stacking frames that had been removed from the BOSTON.

Margin and a fellow employee, Augie Michele, were working ashore in the dock area, standing inside several stacking frames when a hatch cover from the BOSTON was lowered directly above them by a gantry crane located on the dock. Michele saw the hatch cover descending and warned Margin. In an effort to escape what he perceived to be imminent danger, Margin attempted to scale the stacking frames but slipped and fell approximately eight feet to the ground, suffering a separated shoulder. He sued Sea-Land and its insurer, Travelers Insurance Company, for his injuries under § 905(b). After Sea-Land filed a third-party complaint against Cooper, Margin amended his complaint and made Cooper a defendant, alleging that Cooper was the owner and operator of the crane. In their answers, the defendants asserted various defenses and contended that the court lacked jurisdiction because the parties were not diverse in citizenship and because the injuries occurred on a wharf and, therefore, outside of maritime jurisdiction.

At the close of the plaintiff's case, the defendants moved for an involuntary dismissal pursuant to Fed.R.Civ.P. 41(b) [1] and dismissal for lack of subject matter jurisdiction under Fed.R.Civ.P. 12(b)(1). The district court held that it lacked jurisdiction because the parties were not of diverse citizenship, and, since Margin had failed to establish vessel negligence, he did not fulfill the requirements to raise a maritime claim under § 905(b). The district court found that the only negligence in this case, if any existed, lay with Cooper because its employees off-loaded a hatch cover over the area where the plaintiff was welding on the stacking frames. The district court, therefore, dismissed Margin's claims against all the defendants, including Cooper. In further support of its order, the court observed that any claim against Cooper under state law would be barred by the Louisiana one-year prescriptive period because suit was not filed against that company until sixteen months after the injury. Having found that it lacked jurisdiction, the district court did not expressly address the motion for involuntary dismissal on the ground that the plaintiff had shown no right to relief.

II.

In ruling on the defendants' motions to dismiss for lack of jurisdiction and for failure to show vessel negligence, the district court held that it lacked subject matter jurisdiction over Margin's claims because

1. Rule 41(b) provides in relevant part:
   After the plaintiff, in an action tried by the court without a jury, has completed the presentation of his evidence, the defendant ... may move for a dismissal on the ground that upon the facts and the law the plaintiff has shown no right to relief.

he established no cause of action under § 905(b). Failure to prove a claim must be distinguished, however, from lack of jurisdiction. *See Daigle v. Opelousas Health Care, Inc.,* 774 F.2d 1344, 1346–48 (5th Cir.1985). Although the distinction does not affect the outcome in this case, our jurisdictional limitations require that it be observed in the analysis of such matters.

## A.

■■■ By amending its complaint to add Cooper as a defendant, Margin destroyed diversity as a basis for subject matter jurisdiction. Jurisdiction could not rest on § 905(b), which only authorizes a cause of action when jurisdiction already exists. *See May v. Transworld Drilling Co.,* 786 F.2d 1261, 1263 (5th Cir.), *cert. denied,* —— U.S. ——, 107 S.Ct. 190, 93 L.Ed.2d 123 (1986). Furthermore, Margin could not have invoked traditional maritime jurisdiction, because he did not allege a tort that occurred on navigable waters and thus failed to satisfy the locality rule. *See Executive Jet Aviation v. City of Cleveland,* 409 U.S. 249, 253, 93 S.Ct. 493, 497, 34 L.Ed.2d 454 (1972).

Margin urges on appeal that the district court had maritime jurisdiction under the Admiralty Extension Act, 46 U.S.C. § 740. That Act extends admiralty jurisdiction to "all cases of damage or injury, to person and property, caused by a vessel on navigable water, notwithstanding that such damage or injury be done or consummated on land."

In *Gutierrez v. Waterman Steamship Corp.,* 373 U.S. 206, 83 S.Ct. 1185, 10 L.Ed.2d 297 (1963), the Supreme Court found that a longshoreman suing for injuries sustained when he slipped on beans that had become scattered about a dock during their unloading from defective cargo containers properly raised a claim within maritime jurisdiction under the Act. The Court held it sufficient that "it is alleged that the shipowner commits a tort while or before the ship is being unloaded, and the impact of which is felt ashore at a time and place not remote from the wrongful act." *Id.* at 210, 83 S.Ct. at 1188.

In *Victory Carriers, Inc. v. Law,* 404 U.S. 202, 92 S.Ct. 418, 30 L.Ed.2d 383 (1971), the plaintiff longshoreman was injured during the loading process when the overhead protection rack of his forklift, owned by the stevedoring company, came loose and fell on him. Faced with the argument that the Act reached this particular injury because the longshoreman was "engaged in the service of a ship located on navigable waters," the Supreme Court held that jurisdiction in *Gutierrez* "turned, not on the 'function' the stevedore was performing at the time of the injury, but, rather upon the fact that his injury was caused by an appurtenance of a ship, the defective cargo containers...." *Id.* at 210–11, 92 S.Ct. at 424. The Court refused to "extend the reach of the federal law to pier-side accidents caused by a stevedore's pier-based equipment." *Id.* at 204, 92 S.Ct. at 421.

■■■ The rule that we derive from *Gutierrez* and *Victory Carriers* is that, to invoke maritime jurisdiction under the Admiralty Extension Act, a plaintiff injured on shore must allege that the injury was caused by a defective appurtenance of a ship on navigable waters. It is not enough that the plaintiff alleges he was engaged in stevedoring activities and the accident would not have occurred but for the presence of the ship alongside the dock. The vessel or its defective appurtenances must be the proximate cause of the accident. This court has refused to extend the reach of the Act absent proximate cause. *See Adams v. Harris County,* 452 F.2d 994, 996–97 (5th Cir.1971), *cert. denied,* 406 U.S. 968, 92 S.Ct. 2414, 32 L.Ed.2d 667 (1972) (vessel approaching draw bridge did not proximately cause motorcyclist's accident when bridge keeper negligently dropped barricade and opened bridge to allow passage); *Kent v. Shell Oil Co.,* 286 F.2d 746, 749–50 (5th Cir.1961) (vessel did not cause injury sustained by truck driver when oil field pipe unexpectedly rolled off his truck bed onto him as he stood between truck and barge on which it was to be loaded). *See also Pryor v. American President Lines,* 520 F.2d 974, 979 (4th Cir.1975),

*cert. denied,* 423 U.S. 1055, 96 S.Ct. 787, 46 L.Ed.2d 644 (1976) (agreeing "with the Fifth Circuit ... that a ship or its appurtenances must proximately cause an injury on shore to invoke the Admiralty Extension Act and the application of maritime law"). Accordingly, we must determine whether Margin alleged that a defective appurtenance of the BOSTON proximately caused his injury.

### B.

The district court is a court of limited jurisdiction and can only exercise that jurisdiction which is statutorily conferred upon it by Congress. The basis for federal subject matter jurisdiction must affirmatively appear in the pleadings of the party seeking to invoke jurisdiction. *See* Fed.R.Civ.P. 8(a); *Le Mieux Bros. v. Tremont Lumber Co.,* 140 F.2d 387, 389 (5th Cir.1944). An attack on jurisdiction should seek to determine "some discreet jurisdictional requisite" without addressing the merits of the plaintiff's claim. *Green v. Ferrell,* 664 F.2d 1292, 1294 (5th Cir.1982). If the defendant challenges the plaintiff's jurisdictional allegations, the plaintiff has the burden to prove jurisdiction. *Save Our Cemeteries, Inc. v. Archdiocese of New Orleans, Inc.,* 568 F.2d 1074, 1076 (5th Cir.), *cert. denied,* 439 U.S. 836, 99 S.Ct. 120, 58 L.Ed.2d 133 (1978).

Neither Margin's original complaint nor his amended complaint pled jurisdiction under the Admiralty Extension Act. If a complaint fails to cite the statute conferring jurisdiction, the omission will not defeat jurisdiction if the facts alleged satisfy jurisdictional requirements. *Hildebrand v. Honeywell, Inc.,* 622 F.2d 179, 181 (5th Cir.1980). Margin's amended complaint, however, fails to allege that his injury was caused by a defective appurtenance of the BOSTON. Margin alleges only that he was injured as a result of (1) defendants' failure "to provide [him] with a safe place in which to work" and with "safe and competent supervisors, fellow servants and co-employees," (2) their failure to "take customary steps to protect [his] person," and (3) "the negligence of [defendants'] agents and employees."

The defendants in their answers asserted that the district court lacked subject matter jurisdiction. The court could have dismissed Margin's case for a lack of jurisdiction at this stage of the proceedings. The court apparently felt, however, that Margin's vague allegation that the ship failed to provide him with a "safe place to work" constituted a general factual charge that vessel negligence caused the accident.

This assertion that the BOSTON failed to provide Margin with a safe place to work was later supplemented by plaintiff's statements in the pretrial order. There Margin asserted that he was injured "as he attempted to avoid from being crushed by a hatch cover being lowered off of the M/V BOSTON;" that he "attempted to climb over the stacking frames to avoid from being crushed;" and that "he slipped on oil or grease on the frames and struck his shoulder against a gantry on the dock." Margin listed as a contention that both defendants were negligent by not cleaning the grease and oil from the stacking frames before he began to work on them and in not warning him that a hatch cover was being lowered on top of him.

Margin did not assert that grease or oil on the stacking frames caused him to slip and fall until his deposition was taken eighteen months after the accident. At trial, Margin merely speculated as to the origin of this foreign substance. He said it could have been on the frames before they left the ship or it could have leaked from other sources. He testified that it may have come from the spreader bar, a part of Cooper's crane which picked up the stacking frames to transport them to the dock. His only assertion of vessel negligence continued to be that Sea-Land must have failed to inspect the dock area, including the stacking frames, and that therefore Sea-Land failed to provide a safe place to work.

In ruling on the 12(b)(1) motion to dismiss for a lack of jurisdiction at the close of the plaintiff's case, the district court mistakenly focused on whether Margin had proved a § 905(b) cause of action. It should have focused on the Admiralty Extension Act's requirement that the plaintiff

allege an injury caused by a defective appurtenance of a vessel. In any event, the court's determination that § 905 vessel negligence did not cause Margin's injury is akin to a finding under the Act that no vessel related acts proximately caused his injury and thus no maritime jurisdiction existed. The court's specific factual findings were:

(12) Although Robert Margin allegedly slipped from the top of the stacking frames due to the presence of hydraulic fluids or grease, the Court finds no reasonable evidence or corroboration to support this allegation and concludes plaintiff simply fell in his attempt to avoid the hatchcover.

(13) No mention was made of any hydraulic fluid or foreign substance on the stacking frames until plaintiff's deposition of February 1985, more than eighteen months after the accident.

The district court's finding that even the intimation of vessel negligence was an afterthought is equivalent to a determination that Margin failed to assert an injury caused by a defective appurtenance of a ship on navigable water.

Margin's argument throughout the trial and appellate proceedings has stressed that the motion of the BOSTON's hatch cover caused him to clamber over and slip and fall off the BOSTON'S stacking frames. These facts simply do not confer maritime jurisdiction under *Gutierrez* and *Victory Carriers*. The appurtenances themselves must be claimed to be defective extensions of the vessel. There was nothing wrong with the hatch cover. The BOSTON did not lower the hatch cover. Cooper was operating the land-based crane that had lifted the hatch cover. No action by the BOSTON caused Margin to scale the stacking frames or to fall to the ground. When he belatedly introduced the possible presence of oil or grease on the frames he did not connect it with the ship or with any act of vessel negligence. Margin wholly failed to allege that vessel negligence proximately caused his injury.

The liberality the district court extended to Margin in allowing factual development of the conclusory allegations in his pleadings cannot operate to confer subject matter jurisdiction where none was adequately alleged in the first instance. Had Margin alleged in his pleadings that his injury was caused by a defective appurtenance of a vessel—that the BOSTON caused the hatch cover to be lowered or that the BOSTON was responsible for allowing oil or grease to remain on the stacking frames—then we would be presented with a different case. However, Margin did not allege the discreet jurisdictional requirement that a defective appurtenance of a vessel caused his injury. This is further confirmed by the fact that he offered no proof at trial that would establish such negligence. Since Margin's cause of action asserts no more than a ship-side accident which was not proximately caused by the negligence of a vessel on navigable water there was no maritime jurisdiction over Margin's claims under the Admiralty Extension Act.

III.

Our conclusion that the district court was correct in dismissing Margin's cause of action for a lack of subject matter jurisdiction makes it unnecessary for us to address the merits of the case. The district court's judgment is

AFFIRMED.