Rodrigo **MAGANA** and Maria
Magana Plaintiffs,

v.

**HAMMER & STEEL, INC.**, Poston Industrial Maintenance Company, Inc. and Robert B. Miller & Associates Defendants.

No. CIV.A.G–02–180.

United States District Court,
S.D. Texas,
Galveston Division.

June 6, 2002.

Gary Benjamin Pitts, Pitts & Asoc, Houston, TX, for Rodrigo Magana, Maria Magana, plaintiffs.

Maria L Poole, Houston, TX, for Hammer & Steel, Inc., defendant.

G Byron Sims, Brown Sims PC; Houston, TX; for Robert B Miller & Associates, defendant.

## ORDER DENYING DEFENDANTS' MOTIONS TO DISMISS FOR LACK OF SUBJECT MATTER JURISDICTION

KENT, District Judge.

This is a personal injury lawsuit arising in admiralty wherein Plaintiffs Rodrigo Magana ("Magana") and Maria Magana seek damages from Defendants Robert B. Miller & Associates ("Miller"), Hammer & Steel, Inc. ("Hammer") and Poston Industrial Maintenance Company, Inc. ("Poston") for injuries sustained by Magana during a ship-side accident. Now before the Court are two virtually identical Motions to Dismiss for Lack of Subject Matter Jurisdiction, filed by Miller and Hammer, respectively. After carefully considering these Motions, Plaintiffs' Response thereto and the applicable law, the Court concludes that both Motions to Dismiss must be **DENIED**.

### I.

The facts averred by Plaintiffs can be summarized concisely. On January 4, 2001, Magana was working as a longshoreman for Bo–Mac Contractors, Inc. in the Houston Ship Channel. That same day, Magana attempted to unload an eighty-five foot long steel piling sheet from a floating barge for purposes of driving the steel piling into the soil alongside the waterway. Unbeknownst to Magana, however, the steel piling sheet was covered with a sticky coating. Consequently, a loose chunk of concrete aboard the barge adhered to the sticky steel. As Magana was removing the steel piling sheet from the vessel, the concrete dislodged from the top of the steel sheet and plummeted downward towards

him. The concrete struck Magana with great force, seriously injuring his head and back. After the accident, Magana underwent spinal surgery and a halo device was implanted into his skull.

On March 15, 2002, Plaintiffs filed this lawsuit against Miller (the owner of the barge), Hammer (the entity responsible for the sale and transportation of the steel piling sheets) and Poston (the entity that applied the sticky coating to the steel piling sheet and placed it in the barge). In their Original Complaint, Plaintiffs allege that all three Defendants (1) negligently failed to deliver the steel piling sheet in a safe and reasonable condition; (2) negligently placed the steel piling sheet into an unclean barge littered with chunks of concrete; and (3) negligently failed to warn Magana of the potential danger presented by the concrete that clung to the sticky steel. Plaintiffs further allege that the Court has jurisdiction over these claims pursuant to "33 U.S.C. § 905(b) and the Court's Article [III] admiralty and maritime jurisdiction." In the instant Motions to Dismiss, Miller and Hammer challenge the validity of these jurisdictional allegations, arguing that Plaintiffs' assertions lack the "salty flavor" of true maritime claims.

## II.

■ District courts are powerless to exercise jurisdiction in excess of the limited jurisdiction statutorily conferred upon them by Congress. *See Margin v. Sea–Land Servs., Inc.*, 812 F.2d 973, 976 (5th Cir.1987). A complaint filed by a plaintiff seeking to invoke the jurisdiction of a federal court must affirmatively state the grounds that give rise to the court's jurisdiction over the claims asserted. *See* Fed. R.Civ.P. 8(a). If the defendant subsequently challenges the plaintiff's stated basis for jurisdiction, the plaintiff bears the burden of establishing that jurisdiction indeed exists. *See Margin*, 812 F.2d at 976. A court's consideration of such jurisdictional disputes should, however, focus only on discerning "some discreet jurisdictional requisite," as indicated by the facts alleged in the plaintiff's complaint; and the inquiry should not address the merits of a plaintiff's claim. *Green v. Ferrell*, 664 F.2d 1292, 1294 (5th Cir.1982); *see also Grinter v. Petroleum Operation Support Serv., Inc.*, 846 F.2d 1006, 1008 (5th Cir. 1988) ("Whether the federal claim is substantial should ordinarily be decided on the basis of the plaintiff's complaint.").

As stated above, Plaintiffs' maintain that both 33 U.S.C. § 905(b) and Article III of the United States Constitution confer federal jurisdiction over the instant suit. Miller and Hammer disagree on both counts. Accordingly, the Court must gauge the validity of each jurisdictional allegation.

*33 U.S.C. § 905(b)*

Section 905(b) of the Longshore Harbor Workers' Compensation Act ("LHWCA"), 33 U.S.C. § 901 *et seq.*, states that "[i]n the event of injury to a person covered under [the LHWCA] caused by the negligence of a vessel, then such person, or anyone otherwise entitled to recover damages by reason thereof, may bring an action against such vessel as a third party...." 33 U.S.C. § 905(b). Thus, § 905(b) expressly creates a cause of action for longshoremen who, like Magana, allege to have been injured by a vessel. The provision does not, however, act as an independent basis for admiralty and maritime jurisdiction over a longshoreman's claims. *See Margin*, 812 F.2d at 975 (emphasizing that failure to state a claim under § 905(b) must be distinguished from lack of jurisdiction); *May v. Transworld Drilling Co.*, 786 F.2d 1261, 1263 (5th Cir. 1986) (explaining that whether a district court has jurisdiction to consider a ship

yard worker's claims and whether the worker has alleged a cause of action under § 905(b) are separate and distinct inquiries); *Parker v. South Louisiana Contractors, Inc.*, 537 F.2d 113, 118 (5th Cir.1976) (highlighting that the passage of § 905(b) "neither expanded nor constricted" the boundaries of maritime jurisdiction; and likewise failed to create a new federal cause of action cognizable under federal-question jurisdiction). Therefore, although § 905(b) may provide Plaintiffs with a valid cause of action, they cannot employ § 905(b) as a vehicle for invoking the Court's admiralty and maritime jurisdiction.

*Artilcle III of the United States Constitution*

■ Article III of the United States Constitution provides in part that "[t]he judicial power of the United States shall extend ... to all cases of admiralty and maritime jurisdiction." U.S. Const. art. III, § 2, cl. 1. In order for such jurisdiction to exist, however, the wrong at issue must satisfy the "locality rule." *See Executive Jet Aviation v. City of Cleveland*, 409 U.S. 249, 253, 93 S.Ct. 493, 497, 34 L.Ed.2d 454 (1972) ("If the wrong occurred on navigable waters, the action is within admiralty jurisdiction; if the wrong occurred on land, it is not."); *May*, 786 F.2d at 1263 (finding that where plaintiff's "injury occurred on land in a shipyard, not even the first requirement of admiralty jurisdiction was met"). Here, Plaintiffs candidly admit that Magana suffered no injury on navigable water; and that all of Magana's injuries occurred while he stood on a dock adjacent to the waterway. Plaintiffs are therefore unable to satisfy the "locality rule" and consequently, cannot invoke the Court's admiralty and maritime jurisdiction pursuant to Article III.

### III.

■ The conclusion that Plaintiffs' Complaint misstates the basis for federal jurisdiction does not, however, end the Court's jurisdictional inquiry. Even where a plaintiff's complaint fails to cite the proper statute conferring jurisdiction, the omission will not defeat jurisdiction as long as the facts alleged satisfy jurisdictional requirements. *See Margin*, 812 F.2d at 976 (citing *Hildebrand v. Honeywell, Inc.*, 622 F.2d 179, 181 (5th Cir., 1980)). Additionally, under Rule 8(a), district courts are obligated to read a plaintiff's complaint liberally. *See* Fed.R.Civ.P. 8(a); *Hildebrand*, 622 F.2d at 181; *Houser v. Rice*, 151 F.R.D. 291, 293 (W.D.La.1993). Thus, the Court is duty-bound to query whether Plaintiffs' factual allegations satisfy the requirements of jurisdiction-conferring statute other than § 905(b) or Article III. In making this determination, the Court finds it imperative to inquire whether the Admiralty Extension Act ("AEA"), 46 App. U.S.C. § 740, furnishes a jurisdictional foundation for Plaintiffs' claims.

*The Admiralty Extension Act*

The AEA extends the admiralty and maritime jurisdiction of the federal courts to "cases of damage or injury, to person or property, caused by a vessel on navigable water, notwithstanding that such damage or injury be done or consummated on land." 46 App. U.S.C. § 740. The Supreme Court carefully considered the AEA in *Gutierrez v. Waterman S. S. Corp.*, 373 U.S. 206, 83 S.Ct. 1185, 10 L.Ed.2d 297 (1963), a case wherein a longshoreman sued a vessel owner for injuries he sustained after slipping on beans that had scattered about a dock. *See id.* at 207, 83 S.Ct. at 1186. The beans were dislodged from defective cargo containers while the containers were being unloaded from the defendant's vessel. *See id.* The Court deemed the longshoreman's allegations

sufficient to invoke maritime jurisdiction under the AEA, holding that such jurisdiction exists "when, as here, it is alleged that the shipowner commits a tort while or before the ship is being unloaded, the impact of which is felt ashore at a time and place not remote from the wrongful act." *Id.* at 210, 83 S.Ct. at 1188.

The Supreme Court refined its *Gutierrez* holding in a later case, *Victory Carriers, Inc. v. Law*, 404 U.S. 202, 92 S.Ct. 418, 30 L.Ed.2d 383 (1971). In *Victory*, the Supreme Court was faced with the task of deciding whether to extend admiralty jurisdiction to encompass the claims of an individual who had sustained injuries while loading cargo on to a vessel with a forklift. *See id.* at 203, 92 S.Ct. at 426. The Court ultimately declined to apply the AEA, reasoning that state law traditionally governed accidents such as the with which the Court was faced. *See id.* at 211–12, 92 S.Ct. at 425. The Court distinguished *Gutierrez*, stating that "[t]he decision in *Gutierrez* turned, not on the 'function' of the [plaintiff], but, rather, upon the fact that his injury was caused by an appurtenance of a ship, the defective cargo containers . . . ." *Id.* at 210–211, 92 S.Ct. at 424. The Court also implored lower courts to proceed with caution in dealing with the extension of admiralty jurisdiction under the AEA. *See id.* at 212, 92 S.Ct. at 425.

After interpreting the holdings in *Gutierrez* and *Victory*, the Fifth Circuit concluded that the AEA applies to a vessel and her appurtenances "and does not include those performing actions for the vessel." *Egorov, Puchinsky, Afanasiev & Juring v. Terriberry, Carroll & Yancey*, 183 F.3d 453, 456 (5th Cir.1999). More-

over, "[i]t is not enough that the plaintiff alleges he was engaged in stevedoring activities and the accident would not have occurred but for the presence of the ship alongside the dock. The vessel or its defective appurtenance must be the proximate cause of the accident." *Margin*, 812 F.2d at 975; *see also Dahlen v. Gulf Crews, Inc.*, 281 F.3d 487, 493 (5th Cir. 2002). Accordingly, the Court must ask whether Plaintiffs have alleged that "a vessel or its defective appurtenance" proximately caused Magana's injuries. With respect to Plaintiffs' claims against Miller only, the Court concludes that they have.

*Plaintiffs' claims against Miller*

█ Plaintiffs allege that the crew members aboard Miller's barge were negligent in delivering the steel piling sheet, by failing to remove the loose concrete from the barge prior to loading the sticky steel and by failing to warn Magana of the danger posed by the concrete above. Given that "[t]here is no distinction in admiralty between torts committed by the ship itself and the ship's personnel while operating it," *Gutierrez*, 373 U.S. at 210, 83 S.Ct. at 1188, Plaintiffs' allegations of negligence by the personnel aboard the barge are equivalent to allegations of negligence by the barge itself. Furthermore, Plaintiffs apparently allege that an "appurtenance of a vessel" (the loose concrete) caused Magana's injury.[1] Plaintiffs therefore allege a tort caused by a vessel and/or its defective appurtenance, committed while or before the vessel was being unloaded, the impact of which was felt ashore at a non-remote time and place. And pursuant to the authorities cited above, such allegations undoubtedly suffice to bring

---

**1.** Plaintiffs Complaint does not definitively indicate whether the loose concrete was originally part of the barge itself (which of course would qualify the concrete as an "appurtenance of the vessel") or simply debris littering

the barge's deck. However, in the interest of affording the Plaintiffs' Complaint a liberal interpretation, the Court presumes that the concrete was an "appurtenance."

this action within the purview of the AEA. Accordingly, Miller's Motion to Dismiss for Lack of Subject Matter Jurisdiction is hereby **DENIED.**

*Plaintiffs' claims against Hammer*

 Unlike Plaintiffs' claims against Miller (the vessel-owner), Plaintiffs' claims against Hammer and Poston do not allege a tort caused by a "vessel or its defective appurtenance" and therefore fall outside the scope of the AEA. Nevertheless, the Court has jurisdiction over these claims pursuant to the supplemental jurisdiction statute, 28 U.S.C. § 1367. Section(a) of that statute provides that "in any civil action of which the district courts have original jurisdiction, the district courts shall have supplemental jurisdiction over all other claims that are so related to the claims in the action within such original jurisdiction that they form part of the same case or controversy under Article III of the United States Constitution." 28 U.S.C. § 1367(a). Here, Plaintiffs fail to distinguish between Miller, Hammer and Poston in asserting the various theories of negligence recited above, maintaining instead that the combined negligence of all three Defendants ultimately caused Magana's injuries. Accordingly, the Court finds that Plaintiffs' claims against Hammer and Poston are so related to the claims that fall within the Court's maritime jurisdiction under the AEA (the claims asserted against Miller) that they form part of the same "case or controversy." Consequently, Hammer's Motion to Dismiss is also respectfully **DENIED.**

Finally, the Court reiterates that whether Plaintiffs have stated a valid tort claim against any Defendant comprises an issue that is wholly distinct from the determination of maritime and/or supplemental jurisdiction. Thus, by finding merely that jurisdiction is present here, the Court has in no way commented on the validity of Plaintiffs' claims. On the basis of Plaintiffs' rather generic allegations, the Court remains unsure as to whether Plaintiffs' are attempting to assert maritime claims against all three Defendants, or whether Plaintiffs' negligence claims against one or more of the Defendants are alleged pursuant to state law. Therefore, Plaintiffs are hereby **ORDERED** to file an Amended Complaint within thirty (30) days of this Order, specifically identifying the law(s) governing *each* cause of action alleged against *each* Defendant. Such an Amended Complaint will enable the Court to better comprehend the precise nature of this case, thereby ensuring that the Court will take the most appropriate steps with regard to allowing for a prompt and fair adjudication of the genuine merits of the asserted claims.

**IT IS SO ORDERED.**