**Thomas A. TREMBLAY Plaintiff,**

v.

**UNITED STATES of America Defendant.**

No. CIV.A. G–02–172.

United States District Court, S.D. Texas, Galveston Division.

April 21, 2003.

Michael Lynn Davis, Attorney at Law, Houston, TX, for Thomas A Tremblay, plaintiff.

Victor M. Lawrence, U.S. Dept of Justice, Washington, DC, for United States of America, U.S. Department of Transportation, Federal Aviation Administration, defendants.

## ORDER GRANTING THE UNITED STATES' MOTION TO DISMISS

KENT, District Judge.

Plaintiff Thomas A. Tremblay ("Plaintiff") brings this lawsuit against the United States of America ("United States") pursuant to the Federal Tort Claims Act, 28 U.S.C. §§ 1346(b), 2671 *et seq.* ("FTCA"), for personal injuries he allegedly suffered as a result of the Federal Aviation Administration's ("FAA") negligence. Specifically, Plaintiff alleges that FAA inspector Rick Taylor ("Taylor") instructed him to jump six feet from an airplane's window exit in order to successfully complete a mock training exercise of evacuating an airplane; that after performing the jump as instructed, Plaintiff seriously injured his back; and that Taylor's instruction was negligent and was the proximate cause of Plaintiff's injuries because such instruction was not required by the applicable FAA guidelines. Now before the Court is the United States' Fed.R.Civ.P. 12(b)(1) Mo-

tion to Dismiss on the basis that the Court lacks subject matter jurisdiction over Plaintiff's claims because the lawsuit is barred by the discretionary function exception to the FTCA, 28 U.S.C. § 2680(a), and the timely Response thereto. For all of the reasons articulated below, the United States' Motion to Dismiss is **GRANTED.**

### I. FACTUAL INTRODUCTION.

Plaintiff is a pilot for Continental Express Airlines ("Continental"). On September 15, 1999, Plaintiff attended Continental's recurrent training session for its pilots that operate Continental's ART 42 aircraft. The training session was conducted entirely by a Continental employee, Erin Eunson (now Erin McWhirter), at George Bush International Airport in Houston, Texas. Approximately a dozen other Continental pilots attended the training, in addition to Taylor. Taylor attended this training in two capacities: (1) as a pilot who needed recurrent training to maintain his active status, and (2) as an FAA Air Crew Program Manager ("FAA Inspector" or "APM").[1] As an APM, Taylor is generally responsible for inspecting Continental's training programs for its ATR 42 fleet. In his capacity as an FAA Inspector, Taylor attended the session to observe and confirm that Continental's recurrent training satisfied the minimum standards set forth in the Federal Aviation Regulations ("FARS"). *See* 14 C.F.R. §§ 121.415, 121.417(c)(2).

During the training session, Eunson asked the pilots to demonstrate that they could open the exit window in the aircraft's passenger compartment. Then, she instructed each pilot to egress from the air-

---

1. Through a Memorandum of Understanding with the FAA, Continental allows FAA Aircrew Program Managers to receive their recurrent training through the company's training program for its own crewmen; hence, allowing an FAA Inspector to obtain his own recurrent training and to inspect Continental's training program simultaneously.

plane by jumping from the exit door. Plaintiff became concerned when other pilots returned to the cabin and indicated that the fall (approximately six to seven feet) was further than it appeared. Plaintiff questioned if he had to make the jump to successfully complete the training. Eunson responded that she thought it was necessary to pass the class, but then referred him to Taylor. Taylor told Plaintiff that he must complete the jump to pass the class, which Plaintiff did.

The next day, Plaintiff began feeling pain in his lower back. Plaintiff ultimately had to undergo two back surgeries, for which Plaintiff now seeks redress.

Plaintiff filed his Original Complaint on March 14, 2002. Therein, Plaintiff alleges that the United States was negligent by: (1) "failing to properly train FAA Inspectors regarding the hazards of forcing pilots to perform procedures such as the one outlined here"; (2) "failing to adequately supervise training such as the training involved in the incident made the basis of this lawsuit"; (3) "instructing Mr. Tremblay to actually jump from the exit door to the concrete below"; and (4) "failing to take in consideration all facts and circumstances regarding potential injuries to trainees such as Mr. Tremblay, during training exercises." With these allegations in mind, the Court now turns to its analysis of the United States' Motion to Dismiss.

## II. ANALYSIS

### Questions Presented

The substantive legal questions before the Court are the following:

1. Does the discretionary function exception bar Plaintiff's claims against the United States that allege the United States was negligent because the FAA failed to adequately train Taylor, failed to adequately supervise Continental's training program, and failed to take into account all the necessary data in relation to potential injuries when formulating its Federal Aviation Regulations?

2. Does the discretionary function exception bar Plaintiff's claims against the United States if Taylor, in his capacity as an FAA inspector, told Plaintiff that he had to jump from the Continental Express jet to complete the safety portion of Continental's training program, despite the fact that there was no Federal Aviation Regulation mandating Plaintiff actually perform the jump to complete recurrent training?

The Court must respectfully answer yes to the above questions; hence, this Court does not have subject matter jurisdiction over Plaintiff's lawsuit. Before turning to the substantive analysis of the discretionary function exception, the Court feels compelled to elucidate the relevant federal regulations that are central to this Court's analysis and conclusion in this matter.

### Relevant Federal Aviation Regulations of Airlines' Safety Programs

Under the Federal Aviation Act of 1958, 49 U.S.C. §§ 40101 *et seq.*, the FAA is responsible for promoting safety in flight transportation. The FAA adopted FARS as a means to ensure that American air carriers' pilots and crews meet specified minimum training standards. *See* 14 C.F.R. § 121.400 *et seq.* Carriers, of course, have the option of using higher standards than those provided in the FARS. Plaintiff successfully completed his initial training program, which included required emergency training. *See* 14 C.F.R. §§ 121.415(a)(3), 121.417. In order to maintain his pilot's license, Plaintiff must complete recurrent training every twenty-four months. *See* 14 C.F.R. § 121.417(c)(2). According to 14 C.F.R. § 121.427(b), "[r]ecurrent ground training for crewmembers ... must include *at least* the following: ... (2) Instruction *as neces-*

*sary* in the subjects required for initial ground training by § 121.415(a), *as appropriate,* including emergency training .... " (emphasis added).

The FARS are not intended to be a comprehensive code of what an airline must and must not do in order to comply with the FAA; rather, the FAA attempts to ensure that airlines met minimum mandatory requirements. In order to accomplish this goal, the FAA requires airlines to submit proposals of their training plans, which the FAA evaluates, approves, and monitors. *See* 14 C.F.R. § 121.405. To ensure that the airlines act in accordance with their submitted plans, amongst other FAA obligations, the Federal Aviation Act authorizes the FAA to conduct inspections of the airlines' operations. *See* 49 U.S.C. § 44701. The FAA created a manual to aid inspectors in carrying out their duties: the Air Transportation Operations Inspector's Handbook (FAA Order 8400.10) ("Handbook"). The Handbook casts considerable light on the role of the FAA, through its inspectors, in interacting with airlines to ensure that they meet certain safety thresholds. In chapter two of the Handbook, titled "Training Programs and Airman Qualifications," it states: "TRAINING PROGRAM OVERVIEW. This Chapter contains *direction* and *guidance* to be used by FAA personnel responsible for the evaluation, approval, and surveillance of Part 121 and Part 135 flightcrew training programs." *See* Handbook, FAA Order 8400.10, Volume 3, Chapter 2 at FAA § 281 (emphasis added). Later under the same title, the Handbook affirms that the operator (Continental) "is responsible for ensuring that its training program is complete, current, and in compliance

with regulations." *Id.* Most telling, though, is how the Handbook explains the inspectors' roles:

> It is the policy of Flight Standards Service (FSS) to encourage operators to be innovative and creative when developing training methods and techniques. Principal Operations Inspectors (POI's) are responsible for ensuring that regulatory requirements are met and that the operator's crewmembers and dispatchers can competently perform their assigned duties before they are authorized to enter revenue service. POI's are empowered by FSS to *use discretion, allow latitude, and to exercise judgment concerning the details of training program approval and training techniques that operators use.*

*Id.* (emphasis added).[2]

### The Court Lacks Subject Matter Jurisdiction Over Plaintiff's Lawsuit

District courts are powerless to exercise jurisdiction in excess of the limited jurisdiction statutorily conferred upon them by Congress. *See Margin v. Sea–Land Servs., Inc.,* 812 F.2d 973, 976 (5th Cir. 1987). A case is properly dismissed for lack of subject matter jurisdiction when a court lacks the statutory or constitutional power to adjudicate the case. *See Strain v. Harrelson Rubber Co.,* 742 F.2d 888, 889 (5th Cir.1984). If the defendant subsequently challenges the plaintiff's stated basis for jurisdiction, the plaintiff bears the burden of establishing that jurisdiction indeed exists. *See Margin,* 812 F.2d at 976.

The United States may not be sued, as a sovereign, unless it consents to be sued. *See F.D.I.C. v. Meyer,* 510 U.S. 471, 476,

---

**2.** The Court previously explained that Taylor is an FAA Aircrew Program Manager ("APM"). An APM supports a Principal Operations Inspector (referred to in the above quote) by conducting inspections of an airline's operations, and by maintaining "res-

ponsib[ility] for ensuring that the initial and continuing quality of the operator's training program meets the highest standards." *See* Handbook, FAA Order 8400.10, Volume 5, Chapter 6 at FAA § 437.

114 S.Ct. 996, 1000, 127 L.Ed.2d 308 (1994). The FTCA grants federal courts exclusive jurisdiction over civil suits seeking monetary damages against the United States for "injury or loss of property, or personal injury or death caused by the negligent or wrongful act or omission of any employee of the Government while acting within the scope of his office or employment, under circumstances where the United States, if a private person, would be liable to the claimant in accordance with the law of the place where the act or omission occurred." 28 U.S.C. § 1346(b); *see also* 28 U.S.C. § 2671 *et seq.* Congress also carved out many exceptions to its waiver of sovereign immunity under the FTCA, so as to limit the United States' liability in many instances. *See* 28 U.S.C. § 2680. If an exception applies, a district court is powerless to act because sovereign immunity bars it from having subject matter jurisdiction, and such exception cannot be waived. *See Hayes v. United States,* 899 F.2d 438, 450–51 (5th Cir.1990). Further, "the Court must 'strictly construe' these exceptions in favor of the government." *Winters v. United States,* 127 F.Supp.2d 814, 816 (S.D.Tex.2001) (Kent, J.) (quoting *Truman v. United States,* 26 F.3d 592, 594 (5th Cir.1994)). The United States contends that the instant matter is barred by the "discretionary function" exception, which does not waive the United States' sovereign immunity for claims:

> based upon an act or omission of an employee of the Government, exercising due care, in the execution of a statute or regulation, whether or not such statute or regulation be valid, or based upon the exercise or performance or the failure to exercise or perform a discretionary function or duty on the part of a federal agency or an employee of the Govern-

ment, whether or not the discretion involved be abused.

28 U.S.C. § 2680(a).

There is a two-part test for determining whether the discretionary function exception applies. *See United States v. Gaubert,* 499 U.S. 315, 322–23, 111 S.Ct. 1267, 1273–74, 113 L.Ed.2d 335 (1991). First, the acts complained of must be "discretionary in nature, acts that 'involv[e] an element of judgment or choice.'" *Id.* at 322, 111 S.Ct. at 1273 (quoting *Berkovitz v. United States,* 486 U.S. 531, 536, 108 S.Ct. 1954, 1958, 100 L.Ed.2d 531 (1988)). The focus of this inquiry is on the "nature of the conduct, rather than the status of the actor." *See United States v. Varig Airlines,* 467 U.S. 797, 813, 104 S.Ct. 2755, 2764, 81 L.Ed.2d 660 (1984). The exception shields every employee who exercises discretion, not just high-ranking officials or agencies, regardless of title or position. *See id.* The Court asks whether a "federal statute, regulation, or policy specifically prescribes a course of action for an employee to follow"; if the employee's acts contravened such, the exception does not apply because the "employee has no rightful option but to adhere to the directive." *Berkovitz,* 486 U.S. at 536, 108 S.Ct. at 1958–59. If a federal statute, regulation, or policy fails to mandate a specific course of conduct, an employee's acts "'need not *actually* be grounded in policy considerations' so long as it is, 'by its nature, susceptible to a policy analysis.'" *Nurse v. United States,* 226 F.3d 996, 1001 (9th Cir.2000) (quoting *Miller v. United States,* 163 F.3d 591, 593 (9th Cir.1998)).

If the employee acted with discretion, the United States must still prove that the wrongful conduct was the type of judgment that the "discretionary function exception was designed to shield." *Berkovitz,* 486 U.S. at 536, 108 S.Ct. at 1959. The discretionary function exception's pur-

pose was to "prevent judicial 'second-guessing' of legislative and administrative decisions grounded in social, economic, and political policy through the medium of an action in tort." *Varig Airlines,* 467 U.S. at 814, 104 S.Ct. at 2764–65. "When established governmental policy ... allows a Government agent to exercise discretion, it must be presumed that the agent's acts are grounded in policy when exercising that discretion." *Gaubert,* 499 U.S. at 324, 111 S.Ct. at 1267.

 Plaintiff's allegations fall into essentially two categories. First, he claims that the FAA was negligent for failing to properly train its inspectors, negligent for failing to adequately supervise Continental's training program, and negligent for not taking into account potential injuries, such as his, when formulating its FARS. Second, Plaintiff alleges that Taylor was negligent for instructing him that he must jump from the plane. In regards to his first category of allegations, the gravamen of Plaintiff's complaint is that the FAA should have adopted different regulations than those that it did. The Court believes that the United States Supreme Court's decision in *Varig Airlines* is squarely on point. In *Varig Airlines,* the Supreme Court analyzed the FAA's regulatory scheme of putting the duty on the airlines to conform to the FAA's minimum safety guidelines, which the FAA polices through random spot checks to ensure that airplanes are built in accordance with those guidelines, similar to the FARS that regulate airlines' training programs, *supra.* 467 U.S. at 816–17, 104 S.Ct. at 2766. The plaintiffs in that case challenged the FAA's implementation of the spot-check system generally, and the application of the spot-check system in their case. *See id.* at 819, 104 S.Ct. at 2767. The Supreme Court held that the "FAA's implementation of a mechanism for compliance review is plainly discretionary activity of the 'nature and quality' protected by § 2680(a)." *Id.* The

Supreme Court articulated its rationale, holding:

> When an agency determines the extent to which it will supervise the safety procedures of private individuals, it is exercising discretionary regulatory authority of the most basic kind. Decisions as to the manner of enforcing regulations directly affect the feasibility and practicality of the Government's regulatory program; such decisions require the agency to establish priorities for the accomplishment of its policy objectives by balancing the objectives sought to be obtained against such practical considerations as staffing and funding. Here, the FAA has determined that a program of "spot-checking" manufacturers' compliance with minimum safety standards best accommodates the goal of air transportation safety and the reality of finite agency resources. Judicial intervention in such decisionmaking through private tort suits would require the courts to "second-guess" the political, social, and economic judgments of an agency exercising its regulatory function. It was precisely this sort of judicial intervention in policymaking that the discretionary function exception was designed to prevent.

*Id.* at 819–20, 104 S.Ct. at 2767–68. For the same reason, Plaintiff's first category of allegations must fail. Plaintiff's first allegation that the FAA properly failed to train Taylor to inspect Continental's training program improperly intrudes upon the FAA's discretion in training its employees. *See Burkhart v. Washington Metro. Area Transit Auth.,* 112 F.3d 1207, 1217 (D.C.Cir.1997) ("[W]e hold that decisions concerning the hiring, training, and supervising of WMATA employees are discretionary in nature, and thus immune from judicial review. The parties have pointed to no law or policy 'specifically prescrib[ing] guidelines for the hiring, train-

ing, or supervision of WMATA employees.'"). Further, Plaintiff's second and fourth allegations that the FAA did not take into account all proper considerations when formulating its FARS and that the FAA failed to adequately supervise Continental's training program challenge the FAA's discretion to fulfill its mandate-to formulate and implement the safest techniques to regulate airlines while maximizing efficiency consistent with its finite resources. *See* 49 U.S.C. § 44701; *see also Galvin v. Occupational Safety & Health Admin.*, 860 F.2d 181, 184 (5th Cir.1988) ("The determination of whether to conduct an inspection and the frequency, scope, detail, and methods of inspection are left to the discretion of the Secretary."). Thus, the Court concludes that the answer to the first question presented is yes; hence, the Court does not have subject matter jurisdiction to hear the Plaintiff's first, second, and fourth claims because they are barred by the discretionary function exception.

▇ Plaintiff's remaining claim is that Taylor was negligent for actually instructing Plaintiff to jump from the airplane, despite the fact that jumping from the window exit was not a required drill under the applicable FARS. Under 14 C.F.R. § 121.417(c)(1)(iii), each crewmember is required to perform "[a]n emergency evacuation drill with each person egressing the airplane or approved training device using at least one type of installed emergency evacuation slide." Further, under 14 C.F.R. § 121.417(c)(2)(ii)(D), a crewmember is only required to *observe* an emergency evacuation drill including the use of a slide. Plaintiff urges that since the airplane he was receiving his recurrent training on did not have an evacuation slide, he was not required to perform the drill that Eunson and Taylor instructed him to perform. In support of his contention, Plaintiff submits the FAA's Flight Standards Handbook Bulletin for Air Transportation,

Bulletin HBAT 98–14, dated March, 20, 1998 ("Bulletin"), as additional evidence of Taylor's negligence. That Bulletin clarifies that the emergency evacuation drill is not required on airplanes that do not have emergency evacuation slides. Hence, Plaintiff is correct that he did not have to perform the jump to comply with the FAA's recurrent training requirements.

Plaintiff relies on *Wysinger v. United States* for the proposition that he may proceed against the United States because the discretionary function exception does not bar his claim against Taylor, since he alleges Taylor negligently carried out the FAA's regulations. 784 F.2d 1252, 1253 (5th Cir.1986). In *Wysinger*, the Fifth Circuit stated that "once the government has made a decision to act the government is responsible for acts negligently carried out even though discretionary decisions are constantly made as to how those acts are carried out." *Id.* at 1253 (explaining that the United States may be liable for the danger created after a discretionary decision was made). Plaintiff argues that although the FAA may have acted with discretion in how it supervised Continental's training program, once it made its decision, Taylor negligently failed to follow the applicable guidelines.

The Court believes that the United States Supreme Court's later decision in *Gaubert* narrowed that particular section of *Wysinger*. First, the Supreme Court declared that "[a]ctions taken in furtherance of the program were likewise protected, even if those particular actions were negligent." *Gaubert*, 499 U.S. at 323, 111 S.Ct. at 1274. Then, the Supreme Court stated "Discretionary conduct is not confined to the policy or planning level." *Id.* at 325, 111 S.Ct. at 1275. The Supreme Court explained that an agency employee's negligence may be actionable if an employee had "no room for choice or judgment"

on a matter, yet contravened a specific agency directive anyway. *Id.* at 324, 111 S.Ct. at 1274. *But cf. Varig Airlines,* 467 U.S. at 820, 104 S.Ct. at 2767–68 ("It follows that the acts of FAA employees in executing the 'spot-check' program in accordance with agency directives are protected by the discretionary function exception as well."). The question the Court must answer then is whether the Bulletin left discretion for Continental to require Plaintiff to jump from the exit window, which allows Taylor to ratify and instruct such a jump, or whether it specifically mandates that no emergency evacuation drill take place. The Bulletin states:

1. PURPOSE. This bulletin contains information and guidance for principle operations inspectors (POI)'s, inspectors/specialist, and their assigned air carrier certificate holders, regarding the conduct of the one time evacuation slide drill required by 14 CFR part 121, section 121.417(c)(1)(iii).

2. BACKGROUND. We have been asked to comment on the application of section 121.417(c)(1)(iii). This regulation requires crewmembers to perform a one time emergency evacuation drill with each person egressing the airplane or approved training device using at least one type of installed emergency evacuation slide. *This regulation does not apply to airplanes which are not equipped with slides.*

3. POLICY: This particular sub-paragraph (iii) is intended to give crewmembers experience with evacuation slides on those airplanes for which evacuation slides are required. The sub-paragraph (iii) is not applicable to those airplanes for which evacuation slides are not required.

(emphasis added). According to the FAA's mandate, the FAA "shall promote safe flight of civil aircraft in air commerce by prescribing ... regulations and *minimum standards* for other practices, methods, and procedure the Administrator finds necessary for safety in air commerce and national security." 49 U.S.C. § 44701(a)(5) (emphasis added). Obviously, airlines are free to have additional requirements, as long as they meet the FAA's minimum requirements. The Bulletin does not require that crewmembers perform an emergency evacuation drill, but neither does it prohibit it; thus, Continental was free to require its pilots to jump from the exit window. Taylor then did not have authority to instruct Plaintiff not to perform the drill, nor was he mandated by FAA policy to prevent the drill. This is a fine distinction, but, the Court believes, a distinction with a difference. The Court feels it necessary to repeat the overview statement of the FAA Inspector's Handbook:

It is the policy of Flight Standards Service (FSS) to *encourage operators to be innovative and creative* when developing training methods and techniques. Principal Operations Inspectors (POI's) are *responsible for ensuring that regulatory requirements are met* and that the operator's crewmembers and dispatchers can competently perform their assigned duties before they are authorized to enter revenue service. POI's are empowered by FSS to *use discretion, allow latitude, and to exercise judgment concerning the details of training program approval and training techniques that operators use.*

*See* Handbook at FAA § 281 (emphasis added). Taylor's conduct might have been negligent, but it appears that his actions were taken in the spirit of the Handbook's last sentence. Regardless of his possible negligent conduct, an employee's actions taken in furtherance of a program are protected, even if they are negligent. *See Gaubert,* 499 U.S. at 323, 111 S.Ct. at 1274. After carefully reviewing the Bulletin, the Handbook, and the applicable FARS, the Court concludes that Taylor had discretion

738

when he instructed Plaintiff that he had to perform the evacuation drill to complete his recurrent training. Further, when a policy is found to allow a government employee to exercise discretion, the Court must presume that the "agent's acts are grounded in policy when exercising that discretion." *Id.* at 324–25, 111 S.Ct. at 1274–75. Taylor's conduct was essentially a judgment call made at the site of the training program, while in furtherance of the FAA's oversight of Continental's training program. *See Varig Airlines*, 467 U.S. at 820, 104 S.Ct. at 2768 ("In administering the 'spot-check' program, these FAA engineers and inspectors necessarily took certain calculated risks, but those risks were encountered for the advancement of a governmental purpose and pursuant to the specific grant of authority in the regulations and operating manuals. Under such circumstances, the FAA's alleged negligence in failing to check certain specific items in the course of certificating a particular aircraft falls squarely within the discretionary function exception of § 2680(a)."). The Court finds that Plaintiff has failed to overcome the presumption that Taylor's conduct was not the type of conduct that the discretionary function exception was intended to shield; thus, Plaintiff's third allegation is barred as well.

The Court notes that the briefs before the Court were truly excellent, and compliments the lawyers on their zealous advocacy. The Court sympathizes with the Plaintiff considering the difficult surgeries he had to undergo as a result of Continental's training exercise. In the same light, the Court also realizes that Plaintiff has essentially been made whole through workers compensation, and that barring his claims today, as it must, eliminates a redundant claim against a deep pocket-the United States. Despite this, the Court does not enjoy preventing parties from having their day in court because of technical nuances. Yet, this Article III Court

has limited jurisdiction and is not to free to exercise it over this matter because of the specific mandate of Congress, as the United States Supreme Court and other courts have interpreted the FTCA. Accordingly, after significant and careful thought, and for the reasons articulated above, the Court **GRANTS** the United States' Motion to Dismiss and hereby **DISMISSES** Plaintiff's claims **WITH PREJUDICE**. A final judgment will be forthcoming in due course.

**IT IS SO ORDERED.**