Jerry D. JENNINGS, M.D., Petitioner,

v.

Mary Barbara BURGESS and Her Husband, Jimmie Ross Burgess, Respondents.

No. 95–0852.

Supreme Court of Texas.

Argued Dec. 5, 1995.

Decided March 7, 1996.

---

1. We have compared the notebooks submitted in   camera.

Deborah G. Hankinson, Dallas, Cheryl E. Diaz, Dallas, Pamela J. Corrigan, Dallas, for Petitioner.

Martha C. Wright, Grand Prairie, for Respondents.

BAKER, Justice, delivered the opinion of the court in which PHILLIPS, Chief Justice, and HECHT, CORNYN, ENOCH, SPECTOR, OWEN and ABBOTT, Justices, join.

This is a medical malpractice case. Mary and Jimmie Burgess sued Dr. Jerry D. Jennings, Dr. A. Bryant Manning and two health insurance companies for negligent treatment of a basal cell carcinoma. The trial court granted Jennings a summary judgment based on limitations grounds. The trial court severed the Burgesses' claim against Jennings from their claims against the other defendants, and the Burgesses appealed the unfavorable summary judgment.

The Burgesses sued Jennings in the trial court on several grounds. However, on appeal, the Burgesses only challenged the trial court's holding that limitations applied to their claim that Jennings negligently referred Mary Burgess to Manning, another general practitioner, rather than to a specialist as she requested. On this issue, the court of appeals reversed the trial court's judgment and remanded the cause for trial. 903 S.W.2d 388. The court of appeals held that the Texas Constitution's open courts provision prevented the absolute two-year statute of limitations from applying to Mary Burgess' claim against Jennings. The court of appeals did not consider Jennings' claim that

even if the open courts provision applied, the Burgesses did not file suit within a reasonable time after discovery of the alleged malpractice. The court of appeals held that because Jennings raised this argument for the first time in his reply to the Burgesses' response, and did not raise it in his motion for summary judgment, he did not properly present the argument to the trial court and the court of appeals could not consider it.

We disagree with the court of appeals. We hold that the open courts provision does not apply in this case, and that limitations bars the Burgesses' claim against Jennings. Therefore, we need not consider the court of appeals' holding that Jennings did not properly present his claim that the Burgesses did not file suit within a reasonable time. We reverse the court of appeals' judgment and render judgment that the Burgesses take nothing from Jennings.

## BACKGROUND FACTS

On March 3, 1989, Jennings diagnosed a nasal lesion on Mary Burgess as a basal cell carcinoma. After the initial diagnosis, Jennings did not examine or treat the lesion. Instead, he referred Mary to Manning, a general practitioner.

Manning first treated the lesion on March 3, 1989, and continued to treat the condition for over two years. On May 3, 1991, Manning advised Mary to consult a specialist and referred her to Dr. James W. Ward, a plastic surgeon. Ward examined Mary on May 7, 1991. He discovered that the cancer had invaded her nose. Ward performed surgery on Mary's nose in June 1991.

Mary admits she intended to pursue a claim against Jennings and Manning in June 1991. She wrote Ward on July 15, 1991 and requested that he forward all records about the alleged mismanagement of her condition to her attorney. The Burgesses notified Dr. Jennings of their claim on March 3, 1993, and filed suit on May 13, 1993.

## PROCEDURAL HISTORY

### A. The Trial Court

In the trial court, the Burgesses alleged that Jennings negligently treated Mary be-cause he did not protect her against the cancer's continuing invasion of her nose. They further alleged that Jennings was negligent because he did not biopsy the lesion on each occasion Jennings treated Mary. However, the record shows that Jennings did not treat Mary for the nasal lesion after the initial examination and referral to Dr. Manning. The Burgesses' remaining allegation, and the essence of their claim, is that Jennings was negligent because he did not refer Mary to the appropriate specialists to treat the cancer properly.

The trial court granted Jennings a summary judgment on limitations grounds. The trial court severed the summary judgment from the Burgesses' other claims. The Burgesses appealed the adverse summary judgment.

### B. The Court of Appeals

The court of appeals considered the applicable limitations statute and concluded that it barred the action. However, the court of appeals also concluded that the open courts provision prevented application of the absolute two-year limitations period. The court of appeals held that the open courts provision applied because the Burgesses did not discover the alleged negligent referral until May 1991, after the two-year period had expired. The court of appeals found that Jennings' motion for summary judgment and reply to the Burgesses' response did not properly present the issue of whether the Burgesses filed suit within a reasonable time after they discovered the alleged negligent referral. Consequently, the court of appeals held that the Burgesses raised fact issues suspending limitations, and Jennings did not conclusively negate those fact issues to show his entitlement to summary judgment. The court of appeals reversed the trial court's summary judgment and remanded the case for trial.

## APPLICABLE LAW

### A. Summary Judgment

We follow well known standards when we review a summary judgment. *See Sysco*

*Food Serv., Inc. v. Trapnell,* 890 S.W.2d 796, 800 (Tex.1994); *Nixon v. Mr. Property Management Co.,* 690 S.W.2d 546, 548–49 (Tex. 1985).

■ A party moving for summary judgment on the basis of limitations must conclusively establish the bar of limitations. *Delgado v. Burns,* 656 S.W.2d 428, 429 (Tex. 1983); *Zale Corp. v. Rosenbaum,* 520 S.W.2d 889, 891 (Tex.1975). If the nonmovant asserts that a tolling provision applies, the movant must conclusively negate the tolling provision's application to show his entitlement to summary judgment. *See Zale Corp.,* 520 S.W.2d at 891; *Woods v. William M. Mercer, Inc.,* 769 S.W.2d 515, 518 n. 2 (Tex. 1988).

### B. MEDICAL MALPRACTICE–LIMITATIONS

Article 4590i, section 10.01 governs medical malpractice claims. This section provides that notwithstanding any other law, a person may not bring a health care liability claim unless the person files the action within two years from the occurrence of the tort. *See* TEX.REV.CIV.STAT.ANN. art. 4590i, § 10.01 (Vernon Supp.1996). A person may extend the two-year period for seventy-five days by giving notice of a claim under section 4.01 of article 4590i. *See* TEX.REV.CIV.STAT.ANN. art. 4590i, § 4.01 (Vernon Supp.1996).

■ When the precise date of the tort is known, the statutory two-year period begins on that date. *See Kimball v. Brothers,* 741 S.W.2d 370, 372 (Tex.1987). The statute imposes an absolute two-year statute of limitations regardless of when an injured party learns of the injuries. *See Morrison v. Chan,* 699 S.W.2d 205, 208 (Tex.1985). The statute abolishes the discovery rule in cases governed by article 4590i. *See Morrison,* 699 S.W.2d at 208; *see also Nelson v. Krusen,* 678 S.W.2d 918, 920 (Tex.1984). An untimely notice under article 4590i, section 4.01 does not extend the filing deadline. *See Shook v. Herman,* 759 S.W.2d 743, 746 (Tex. App.—Dallas 1988, writ denied).

### C. THE OPEN COURTS PROVISION

■ The Texas Constitution guarantees that persons bringing common law causes of action will not unreasonably be denied access to the courts. *See* TEX. CONST. art. 1, § 13. A statute that unreasonably abridges a justiciable right to obtain redress for injuries caused by another's wrongful act amounts to a denial of due process under article 1, section 13. *Hanks v. City of Port Arthur,* 121 Tex. 202, 48 S.W.2d 944, 947 (1932); *see also Neagle v. Nelson,* 685 S.W.2d 11, 12 (Tex. 1985). The legislature cannot abrogate the right to bring a well-established common law cause of action without a showing that the legislative basis for the statute outweighs the denial of the constitutionally guaranteed right of redress. *Weiner v. Wasson,* 900 S.W.2d 316, 318 (Tex.1995); *Sax v. Votteler,* 648 S.W.2d 661, 665–66 (Tex.1983).

■ A litigant must first show that she has a cognizable, common law cause of action that the statute restricts. A litigant must then show that the restriction is unreasonable or arbitrary when balanced against the statute's purpose and basis. *Sax,* 648 S.W.2d at 666. A statute violates the open courts provision if it cuts off an injured person's right to sue before the person has a reasonable opportunity to discover the wrong and bring suit. *See Nelson,* 678 S.W.2d at 923.

## APPLICATION OF THE LAW TO THE FACTS

In the court of appeals, the Burgesses only claimed that the open courts provision prevented application of the two-year statute of limitations to their negligent referral claim against Jennings. They did not contest application of limitations to their other claims. Here, Jennings does not question whether the Burgesses allege a cause of action for negligent referral. *Moore v. Lee,* 211 S.W. 214 (Tex.1919). Accordingly, for purposes of this opinion, we assume, but do not decide, that the Burgesses have stated cause of action for negligent referral.

The undisputed summary judgment evidence shows that Jennings diagnosed a nasal lesion on Mary as a basal cell carcinoma on March 3, 1989. On that same day, he referred Mary to Manning for treatment.

The summary judgment evidence shows that before Jennings' diagnosis and referral

to Manning, Mary had a basal cell carcinoma on her forehead. A dermatologist treated that carcinoma. Mary testified that when she saw Jennings about the nasal lesion, she identified the lesion on her nose as the same as she had experienced before. Mary specifically requested that a plastic surgeon treat the nasal lesion. Instead, Jennings referred her to Manning, a general practitioner. On March 3, 1989, when she saw Manning, she knew he was a general practitioner and not a dermatologist, plastic surgeon, or other specialist. She nevertheless allowed Manning to care for and treat the lesion on her nose.

After she began her treatments with Manning on March 3, 1989, Mary did not return to Jennings for treatment of the nasal lesion. She did not have any discussions with Jennings about her nose or about Manning's treatment of her nose. While under Manning's care, Mary did not seek to have her nose examined or treated by a dermatologist, plastic surgeon or other specialist, until Manning referred her to Ward, a plastic surgeon, in May 1991. Ward told Mary that the cancer had invaded her nose and that surgery was necessary. Ward performed the surgery on Mary in June 1991.

In July 1991, in a letter to Ward, Mary stated that her previous physicians had mismanaged treatment of her nose and she had grounds to sue them. On March 3, 1993, the Burgesses' attorneys gave Jennings notice of the Burgesses' intent to assert a health care liability claim against Jennings. The Burgesses sued Jennings on May 13, 1993.

■ Here, the undisputed summary judgment evidence shows that Jennings referred Mary to Manning on March 3, 1989. The two-year statute began to run on that date. *Kimball*, 741 S.W.2d at 372. The two-year period expired on March 2, 1991.[1]

The Burgesses' only claim against Jennings on appeal is that the open courts provision prevents the two-year statute from applying because she did not discover the cancer had invaded her nose until she saw Ward in May 1991. We disagree. The undisputed summary judgment evidence shows that she knew on March 3, 1989, the day

Jennings referred her to Manning, that Manning was not a specialist as she requested, but a general practitioner. Accordingly, it is without dispute that the Burgesses had the entire two-year period section 10.01 allows to bring suit.

We do not reach the open courts challenge because the Burgesses had a reasonable opportunity to discover the alleged wrong and bring suit. Because the Burgesses did not give Jennings notice of their alleged claim until March 3, 1993, that notice was untimely and does not extend the filing deadline. *See Shook*, 759 S.W.2d at 746. The Burgesses had to sue on or before March 2, 1991. The Burgesses did not sue until May 13, 1993. Accordingly, the statute bars their claim against Jennings for alleged negligent referral. *Morrison*, 699 S.W.2d at 208.

## SUMMARY

The two-year statute bars the Burgesses' claim against Jennings. Because the open courts provision does not apply, the court of appeals erred in holding otherwise. Because our holding is dispositive of this appeal, we need not consider whether Jennings properly presented his claim that the Burgesses did not file suit within a reasonable time after discovering Dr. Jennings' alleged negligent referral.

We reverse the court of appeals' judgment and render judgment that the Burgesses take nothing from Dr. Jennings.

GONZALEZ, J., concurs.

GONZALEZ, Justice, concurring.

The Court assumes without deciding that the plaintiffs have a negligent referral cause of action against the referring physician. I concur in the judgment, but write separately to point out that the bounds of this cause of action, under Texas law, have yet to be fully developed.

Generally, the mere referral of a patient to another physician does not impose liability on the referring physician for the negligence of the latter. In one oft-quoted case, the court,

1. In their brief in the court of appeals, the Burgesses conceded this fact.

in denying liability on the part of the referring physician, stated:

> In this age of specialization in the practice of medicine it is the duty and function of courts of law to apply rules of law with an intelligent understanding of developing civilization in the field of medicine and surgery. Certainly it would be unjust to hold a family physician responsible for negligent acts of [another physician] whom he might recommend.

*Huber v. Protestant Deaconess Hosp. Ass'n,* 127 Ind.App. 565, 133 N.E.2d 864, 869–70 (1956). Although the referring physician bears no responsibility for the tortious acts of a recommended physician, the referring physician can generally be held liable for his own negligence in failing to exercise reasonable care in making the recommendation.

Support for a negligent referral cause of action is found within the case law of many states. One of the seminal cases in this area is this Court's decision in *Moore v. Lee,* 211 S.W. 214 (Tex.1919). In *Moore,* Dr. Moore agreed to attend and treat Mrs. Lee during and after childbirth. However, at the time of childbirth, Dr. Moore was unable to attend and referred the Lees to Dr. Hardin. Subsequently, Dr. Hardin allegedly committed malpractice, and the Lees sued Dr. Moore for negligence in referring them to Dr. Hardin. This Court articulated the duty owed a patient by a referring doctor:

> If [a referring doctor] acts in good faith and with reasonable care in the selection of the physician or surgeon, and has no knowledge of the incompetency or lack of skill or want of ability on the part of the person employed, but selects one of good standing in his profession, one authorized under the laws of this state to practice medicine and surgery, he has filled the full measure of his contract, and cannot be held liable in damages for any want of skill or malpractice on the part of the physician or surgeon employed.

*Id.* at 216–17 (quoting *Youngstown Park & Falls St. Ry. v. Kessler,* 84 Ohio St. 74, 95 N.E. 509, 511 (1911)). In fact, courts in several states cited *Moore v. Lee* when they adopted the negligent referral cause of action. *See, e.g., Donald v. Swann,* 24 Ala.App. 463, 137 So. 178, 180 (1931) ("[A] physician who sends a substitute ... is not answerable for the negligence or malpractice of the substitute...."); *Graddy v. New York Medical College,* 19 A.D.2d 426, 243 N.Y.S.2d 940, 944 (1963) ("[A] referral of a patient by one physician to another competent physician, absent partnership, employment, or agency, upon abundant authority, does not impose a liability on the referring physician."); *Nash v. Royster,* 189 N.C. 408, 127 S.E. 356, 358 (1925) ("By the clear weight of authority, a physician or surgeon who sends a substitute practitioner to treat a case ... is not liable for the latter's negligence or malpractice, unless the substitute acts as his agent in performing the service, or due care is not exercised in selecting the substitute practitioner."); *Sturm v. Green,* 398 P.2d 799, 804 (Okla.1965) ("[S]uch duty is violated when a physician selects another doctor to handle a potentially dangerous case and knows, or should know, the selectee lacks familiarity with the problems involved.... The general rule is that a physician who is unable to care for a patient may send a substitute to care for the patient, and no liability attaches for negligence of the substitute absent agency or negligence in selection of the substitute.").

Several Texas cases have subsequently relied on *Moore* for this standard of negligent referral. *See, e.g., Johnson v. Whitehurst,* 652 S.W.2d 441, 445 (Tex.App.—Houston [1st Dist.] 1983, writ ref'd n.r.e.) ("[T]he referring doctor cannot be liable for the negligence of the doctor to whom he referred the patient, unless the referring doctor was negligent in recommending the second physician."); *Ross v. Sher,* 483 S.W.2d 297, 301 (Tex.Civ.App.—Houston [14th Dist.] 1972, writ ref'd n.r.e.) ("[T]he referring doctor ... cannot be liable for the negligence of that other doctor unless the evidence shows that he failed to exercise reasonable care in recommending the second physician."); *Floyd v. Michie,* 11 S.W.2d 657, 658 (Tex.Civ.App.—Austin 1928, no writ) ("A physician is not liable for the negligence of another independent practitioner whom he (in the exercise of reasonable care) recommends because he is unwilling to assume the responsibility of diagnosing and treating the malady, and whose services are accepted and

**796**

continued under an independent contract."). The common element among the cases, both from Texas and out of state, that recognize negligent referral as a cause of action is that the referral itself is not enough; there must be knowledge of incompetency or some other triggering factor which causes the negligence to manifest itself.

Recent developments in the health care industry have diffused the medical chain of authority for the sake of containing costs and increasing profits. For example, there are reports that in managed care systems like health maintenance organizations (HMOs), physicians are subjected to gag orders and are given financial incentives not to perform certain procedures or make referrals to outside specialists. Some HMOs hire bargain-rate labs and allow nonphysicians to decide what is or is not appropriate treatment based solely on economic considerations, not on the best interests of the patient. *See generally* Jim M. Perdue & Stephen R. Baxley, *Cutting Costs—Cutting Care: Can Texas Managed Health Care Systems and HMOs Be Liable for the Medical Malpractice of Physicians?*, 27 ST. MARY'S L.J. 23 (1995); Jonathan J. Frankel, *Medical Malpractice Law· and Health Care Cost Containment: Lessons for Reformers from the Clash of Cultures*, 103 YALE L.J. 1297 (1994). Unless the Legislature acts in a comprehensive way to address this issue, courts will be forced to re-think traditional notions of duty and standards of care, leading to fundamental doctrinal shifts gauged both to protect victims of medical malpractice and to shield physicians from frivolous malpractice claims.