**Rick MENDOZA and Irene Mendoza, Plaintiffs,**

**v.**

**UNITED STATES of America, Alicia G. Murphy, M.D. and Mariano Allen, M.D., Defendants.**

**No. EP–03–CA–00345–KC.**

United States District Court, W.D. Texas, El Paso Division.

Feb. 21, 2007.

*See also* 481 F.Supp.2d 643.

John G. Mundie, Walter L. Boyaki, Miranda & Boyaki, El Paso, TX, for Plaintiffs.

Larry W. Hicks, Hicks & Lucky, El Paso, TX, for Defendants.

### *ORDER*

CARDONE, District Judge.

On this day, the Court considered "Plaintiffs' Motion for Reconsideration of Order," "Plaintiffs' First Supplemental Motion for Reconsideration of Order," "Motion of Defendants Murphy and Allen for Summary Judgment," ("Defs.' Mot. for Summ. J."), and "Motion to Challenge Adequacy of Plaintiffs' Expert Report of Defendants Murphy and Allen" ("Defs.' Mot. to Challenge Expert Report"). Having reviewed the record, Plaintiffs' Motion for Reconsideration of Order is **GRANT-**

ED but the relief requested is denied, Plaintiffs' First Supplemental Motion for Reconsideration of Order is **GRANTED** but the relief requested is denied, Defendants' Motion for Summary Judgment is **GRANTED,** and Defendants' Motion to Challenge Expert Report is **DENIED** as moot.

## I. BACKGROUND

The instant case involves a claim by Plaintiffs Rick and Irene Mendoza (collectively "Plaintiffs") against Defendants Alicia G. Murphy, M.D. and Mariano Allen, M.D. (collectively "Defendants") for medical negligence.

On November 27, 2001, Dr. Jeffrey Taber, a surgeon working at Las Palmas Medical Center, conducted a biopsy of Plaintiff Rick Mendoza's bladder. Proposed Undisputed Facts 3b, Ex. 1. Plaintiff Rick Mendoza's bladder specimen, labeled specimen number 01:VH:S006376, was submitted to Dr. Taber in two separate containers-one designated with the letter "A" and labeled "Bladder tumor" and one designated with the letter "B" and labeled "Bladder biopsies." *Id.*

On November 28, 2001, Defendant Murphy executed a report containing her interpretation of specimen numbers 01:VH:S006376–A and B. *Id.* In her report, Defendant Murphy described specimen number 01:VH:S006376–A, which she refers to as specimen number 1, as "malignant, consistent with papillary transitional cell carcinoma, Grade II/IV. Extension into Lamina Propria with invasion of smooth muscle." *Id.* She indicated that specimen number 01:VH:S006376–B, which she refers to as specimen number 2, exhibited "severe chronic cystitis, with focal surface erosion." *Id.*

On December 15, 2001, Dr. Taber surgically removed Plaintiff Rick Mendoza's bladder. Proposed Undisputed Facts 3d, Ex. 2. In his Operative Report, Dr. Taber indicated that the postoperative diagnosis matched the preoperative diagnosis-specifically, "muscle invasive transitional cell carcinoma of the bladder." *Id.* However, within the "Description of Procedure" section, Dr. Taber noted that the frozen sections from Plaintiff Rick Mendoza's pelvic lymph node and distal ureter "revealed no tumor." *Id.*

In a report dated December 15, 2001, Dr. Arturo Vargas, a pathologist, stated that Plaintiff Rick Mendoza's bladder tissue was "negative for definitive invasion" by cancer. Proposed Undisputed Facts 3e (citing to Exhibit 3 attached thereto); Pls.' Resp. to Proposed Undisputed Facts Ae (admitting Defendants' Proposed Undisputed Fact 3e).

On February 7, 2003, Plaintiff Rick Mendoza provided his Notice of Claim against the United States Government for medical negligence. Proposed Undisputed Facts 3f (citing to Exhibit 4 attached thereto); Pls.' Resp. to Proposed Undisputed Facts Ae (admitting Defendants' Proposed Undisputed Fact 3f). Specifically, Plaintiff Rick Mendoza claimed that the United States: (1) "[f]ailed to timely diagnose and treat bladder/urinary tract cancer," (2) "[f]ailed to report to claimant the results of a pathology test which showed cancer," and (3) "[f]ailed to timely operate on the claimant." Proposed Undisputed Facts, Ex. 4.

On August 28, 2003, Plaintiffs filed an original complaint in this Court against the United States of America, alleging violations of the Federal Tort Claims Act, 28 U.S.C. §§ 1346(b) and 2671 *et. seq.* ("FTCA") for medical negligence. Proposed Undisputed Facts 3g; Pls.' Resp. to Proposed Undisputed Facts Ag (admitting Defendants' Proposed Undisputed Fact 3g). On March 7, 2005, Plaintiffs filed a "Motion for Leave to File First Amended Complaint to Join Two New Defendants,"

wherein Plaintiffs sought to join Defendants Alicia G. Murphy, M.D. ("Murphy") and Mariano Allen, M.D. ("Allen"). Specifically, Plaintiffs represented to this Court that:

This Court has and can maintain jurisdiction over the proposed new Defendants under 28 U.S.C. § 1367. The alternative for Plaintiff would be to initiate a lawsuit in state court, which would inefficiently create dual track litigation with increased expenses and a waste of judicial resources.

Pls.' Mot. for Leave to File First Am. Compl. to Join Two New Defs. ¶ 2.

Based upon these representations, this Court granted Plaintiffs leave to file their amended complaint and join Defendants Murphy and Allen on March 8, 2005.

Shortly thereafter, on March 15, 2006, Plaintiffs and the United States of America stipulated to the dismissal of Plaintiffs' action against the United States of America. The following day, March 16, 2006, Plaintiffs filed a "Motion for Court to Decline to Exercise Supplemental Jurisdiction Over Defendants Murphy and Allen, and to Transfer Case to State Court, or Alternatively to Dismiss Without Prejudice," which this Court denied in an order dated June 30, 2006. At the time Plaintiffs filed this motion, the dispositive motions deadline had passed and Defendants Murphy and Allen had already timely filed a Certification of Service of a motion for summary judgment.[1]

During discovery in this case, on August 13, 2004, Plaintiffs requested that Las Palmas Medical Center send the tissue specimen reviewed by Defendant Murphy, specimen number 01:VH:S006376, to their consulting pathologist, Dr. Jonathan Epstein. Proposed Undisputed Facts 3h (citing to Exhibit 5 attached thereto); Pls.'

Resp. to Proposed Undisputed Facts Ag (admitting Defendants' Proposed Undisputed Fact 3g). Though Defendants have provided this Court with a copy of what purports to be Dr. Epstein's report (Exhibit 6 attached to Defendants' Proposed Undisputed Facts), the report is not admissible under Federal Rule of Evidence 803(6) as a record of regularly conducted activity because Defendants failed to prove its admissibility to this Court through the testimony of the custodian of the record or another qualified witness. FED.R.EVID 803(6) (2006).

On October 5, 2005, Plaintiffs delivered defense counsel documents purporting to be notice letters required pursuant to Texas Civil Practice and Remedies Code section 74.051(a). Proposed Undisputed Facts 3k (citing to Exhibit 7 attached thereto); Pls.' Resp. to Proposed Undisputed Facts Ak (admitting Defendants' Proposed Undisputed Fact 3k). No notice letter required pursuant to Texas Revised Civil Statutes article 4590i was served on either Defendant Murphy or Defendant Allen. Proposed Undisputed Facts 3l; Pls.' Resp. to Proposed Undisputed Facts Al (admitting Defendants' Proposed Undisputed Fact 3l).

Plaintiff Rick Mendoza claims that he first learned that there might exist reason to question the accuracy of the November 28, 2001 pathology diagnosis report, and hence question the need to undergo complete removal of his bladder, in February of 2005. Pls.' Resp., Aff. of Rick Mendoza in Support of Pls.' Resp. in Opp'n to Defs.' Mot. For Summ. J. It was at this time, Plaintiff Rick Mendoza claims, that his lawyer informed him that another doctor had reviewed recuts of his biopsy specimen and did not observe smooth muscle invasion. *Id.* Plaintiff Rick Mendoza also

---

1. Under this Court's former Standing Order on Motion Filing Procedures, this Certification of Service was equivalent to timely filing the motion for summary judgment itself.

makes a general statement that he had no reason to suspect the pathology diagnosis report might be inaccurate or misleading prior to November 27, 2003. *Id.*

## II. DISCUSSION

### A. Standard

A summary judgment movant must show by affidavit or other evidence that there is no genuine issue regarding any material fact. *Celotex Corp. v. Catrett,* 477 U.S. 317, 325, 106 S.Ct. 2548, 91 L.Ed.2d 265 (1986). To establish that there is no genuine issue as to any material fact, the movant must either submit evidence that negates the existence of some material element of the nonmoving party's claim or defense, or, if the crucial issue is one for which the nonmoving party will bear the burden of proof at trial, merely point out that the evidence in the record is insufficient to support an essential element of the nonmovant's claim or defense. *Lavespere v. Niagara Machine & Tool Works, Inc.,* 910 F.2d 167, 178 (5th Cir.1990). Once the movant carries the initial burden, the burden shifts to the nonmovant to show that summary judgment is inappropriate. *See Fields v. City of S. Houston,* 922 F.2d 1183, 1187 (5th Cir.1991).

Summary judgment is required if the pleadings, depositions, answers to interrogatories, and admissions on file, together with the affidavits, if any, show that there is no genuine issue as to any material fact and that the moving party is entitled to a judgment as a matter of law. FED.R.CIV.P. 56(c); *Celotex Corp.,* 477 U.S. at 322, 106 S.Ct. 2548. In order for a court to conclude that there are no genuine issues of material fact, the court must be satisfied that no reasonable trier of fact could have found for the nonmovant, or, in other words, that the evidence favoring the nonmovant is insufficient to enable a reasonable jury to return a verdict for the nonmovant. *See Anderson v. Liberty Lobby, Inc.,* 477 U.S. 242, 250 n. 4, 106 S.Ct. 2505, 91 L.Ed.2d 202 (1986).

### B. Reconsideration

In their Motion for Reconsideration of Order, Plaintiffs argue that for this Court to entertain the instant case any further would be a waste of judicial resources because many of the issues have already been decided by a state court judge, whose opinion is now on appeal. Pls.' Mot. for Reconsideration ¶ 2. Plaintiffs argue that the similar ongoing state case involves at least one additional defendant who is not a party to the instant suit, and though they have requested that the additional defendant join the instant suit, the additional defendant has declined to do so. *Id.* ¶ 3. Consequently, Plaintiffs argue, requiring them to participate in "dual track litigation" will involve undue expense. *Id.* ¶ 4.

Defendants respond by arguing that the issues currently pending before this Court are distinct from those currently pending in state court because the instant suit was brought, by choice of Plaintiffs, under a different statute than the suit in state court. Resp. to Pls.' Mot. for Reconsideration of Order ¶ 3. Defendants argue that Plaintiffs' attempt to remand the instant suit to state court is merely a ploy to bootstrap the less stringent standards for causation experts available under the Medical Liability and Insurance Improvement Act, Texas Revised Civil Statutes Annotated article 4590i onto the state law claims currently governed by the Medical Liability Act codified at Chapter 74 of the Texas Civil Practice & Remedies Code. *Id.* ¶ 5. Finally, Defendants assert that "Plaintiffs made the stew in which we are all simmering by choosing to file the same case in two jurisdictions; it is disingenuous for them to now complain about the heat it has produced." *Id.* ¶ 8. Ultimately, should this Court grant Defendants' Motion for Sum-

mary Judgment, Defendants argue that such determination would have a *res judicata* effect on the suit pending in state court, which would serve judicial economy. *Id.* ¶ 6.

■ Having reviewed the arguments above, the Motion to Reconsider is granted. However, as Plaintiffs have raised no issues not previously considered by this Court, the prior order dated June 30, 2006 is adhered to. Both parties have diligently complied with all deadlines set forth in this Court's scheduling order, dispositive motions have been timely filed, and this case is ready for resolution. Moreover, this Court agrees with Defendants that Plaintiffs' position is one of their own making. Plaintiffs represented to this Court that if this Court were to refuse to add the additional Defendants now complained of, "[t]he alternative for Plaintiff[s] would be to initiate a lawsuit in state court, which would inefficiently create dual track litigation with increased expenses and a waste of judicial resources." Pls.' Mot. for Leave to File First Am. Compl. to Join Two New Defs. ¶ 2. It is therefore disingenuous for Plaintiffs to now argue that "[i]f this Court retains jurisdiction there will continue to be two cases involving these two Defendants" and "[t]he expense involved in dual track litigation and trial will be extraordinary." Pls.' Mot. for Reconsideration of Order ¶ 2. Accordingly, this Court will consider the remaining motions pending before it.

## C. Jurisdiction

In their First Supplemental Motion for Reconsideration of Order, Plaintiffs argue that there is no live complaint or pleading that alleges supplemental jurisdiction. Pls.' First Supp. Mot. for Reconsideration of Order ¶ 1. While Plaintiffs assert that this was "probably an oversight" on their part, they argue that a complaint containing no affirmative statement of federal jurisdiction is fatally defective and must be dismissed. *Id.* ¶ 2–3.

Defendants respond by arguing that when Plaintiffs sought leave to add the additional two Defendants now remaining in the instant suit, Plaintiffs represented to this Court that it "has and can maintain jurisdiction over the proposed new Defendants under 28 U.S.C. § 1367." *Id.* ¶ 3. Plaintiffs should now, therefore, be estopped from using their own failure to plead the statute in an attempt to avoid jurisdiction. *Id.* ¶ 4. Defendants further note that the real issue is not whether the complaint is technically deficient, but whether the Court, in fact, has jurisdiction. *Id.* Defendants argue that where a complaint fails to cite the statute conferring jurisdiction, the omission will not defeat jurisdiction if the facts alleged in the complaint nonetheless satisfy the jurisdictional requirements of the statute. *Id.* ¶ 9.

■ A district court is one of limited jurisdiction and it may only exercise jurisdiction statutorily conferred upon it by Congress. *Margin v. Sea–Land Serv., Inc.,* 812 F.2d 973, 976 (5th Cir.1987). The basis for federal subject matter jurisdiction should affirmatively appear in the pleadings of the party who seeks to invoke jurisdiction. *Id.* (citing FED.R.CIV.P. 8(a) and *Le Mieux Bros. v. Tremont Lumber Co.,* 140 F.2d 387, 389 (5th Cir.1944)). Nonetheless, "[i]f a complaint fails to cite the statute conferring jurisdiction, the omission will not defeat jurisdiction if the facts alleged satisfy jurisdictional requirements." *Id.* (citing *Hildebrand v. Honeywell, Inc.,* 622 F.2d 179, 181 (5th Cir. 1980)).

Title 28 U.S.C. § 1367(a) confers supplemental jurisdiction on district courts. 28 U.S.C. § 1367(a). That is, in a civil action in which a district court has original jurisdiction, a district court may properly exercise supplemental jurisdiction over "all

other claims that are so related to claims in the action within such original jurisdiction that they form part of the same case or controversy under Article III of the United States Constitution." *Id.*

■ In the instant case, this Court has original jurisdiction because Plaintiffs filed their First Amended Complaint under the FTCA against the United States of America. The First Amended Complaint reveals that the claims against the remaining Defendants are so related to the claims against the United States that they form part of the same case or controversy. Thus, this Court may exercise supplemental jurisdiction over the remaining Defendants. The fact that the complaint may be technically deficient in that it does not cite the statute conferring jurisdiction does not defeat jurisdiction in this case.

## C. Motion of Defendants Murphy and Allen for Summary Judgment

In their Motion for Summary Judgment, Defendants argue that they are entitled to summary judgment on Plaintiffs' claims because Plaintiffs filed suit outside of the two year statute of limitations. Defs.' Mot. for Summ. J. 1. In their Response, Plaintiffs argue that they have provided sufficient evidence to create a genuine issue of material fact as to whether they fall within the "open courts" exception to the two year statute of limitations. Pls.' Resp. in Opp'n to Mot. for Summ. J. by Defs. Murphy and Allen 1 ("Pls.' Resp."). In support of their Response, Plaintiffs filed three affidavits. Defendants challenge the admissibility of each of Plaintiffs' affidavits and/or their contents. This Court will address Defendants' evidentiary objections and the substance of the Motion for Summary Judgment in turn.

### 1. Evidentiary objections

Summarized below are Defendants' objections to Plaintiffs' affidavits submitted in support of their "Response in Opposition to Motion for Summary Judgment" and this Court's corresponding rulings:

### a. Objection to affidavit of John Mundie—paragraph 2

■ Defendants object to the affidavit of John Mundie because, as Plaintiffs' counsel, Mundie is not competent under Texas law to testify on behalf of his clients regarding facts essential to their claims, yet Mundie's affidavit goes to the heart of the statute of limitations issue.

Plaintiffs fail to respond.

■ Rule 3.08 of the Texas Disciplinary Rules of Professional Conduct prohibits an attorney from appearing as both witness and counsel in a case unless: (1) the testimony relates to an uncontested issue; (2) the testimony will relate solely to a matter of formality and there is no reason to believe that substantial evidence will be offered in opposition to the testimony; (3) the testimony relates to the nature and value of legal services rendered in the case; (4) the lawyer is a party to the action and is appearing *pro se;* or (5) the lawyer has promptly notified opposing counsel that the lawyer expects to testify in the matter and disqualification of the lawyer would work a substantial hardship on the client. TEX.R. PROF. CONDUCT 3.08 (2006); *Ayres v. Canales,* 790 S.W.2d 554, 556 (Tex.1990). This rule is based upon the concern that an opposing party may be handicapped in challenging the credibility of a testifying attorney, and the concern that it may be unclear to a jury whether a statement by an advocate-witness is to be taken as proof or analysis of proof. *Id.* at 557 (citing TEX.R. PROF. CONDUCT 3.08, comment 4). When an attorney executes an affidavit in order to defeat a motion for summary judgment, and such affidavit does not fall within one of the five exceptions stated above, that attorney is a witness. *See Mauze v. Curry,* 861 S.W.2d

869, 870 (Tex.1993) (per curium) (finding that trial judge abused discretion in denying motion to disqualify counsel when counsel executed affidavit in opposition to motion for summary judgment); *see also Reliance Capital, Inc. v. G.R. Hmaidan, Inc.*, 2006 WL 1389539, **2–3, 2006 Tex. App. LEXIS 4411, at *6 (Tex.App. May 18, 2006) ("When an attorney who represents a party is an affiant in support of a motion for summary judgment, he or she is a witness.") (citing with approval the unpublished opinion in *Aghili v. Banks*, 63 S.W.3d 812, 817–18 (Tex.App.2001)).[2] Moreover, the Fifth Circuit disapproves of an attorney "being the personal vehicle by which the 'undisputed' facts [of a case] are put before the Court." *Inglett & Co. v. Everglades Fertilizer Co.*, 255 F.2d 342, 349 (5th Cir.1958). Specifically, the Fifth Circuit has described this practice as "an inherently unsound" one. *Id.*

In the instant case, Mundie's affidavit goes to the heart of the issue of the statute of limitations. Moreover, his testimony does not fall within the five enumerated exceptions to Rule 3.08. Defendants' objection is **SUSTAINED.** The affidavit is inadmissible under Federal Rule of Civil Procedure 56 and Rule 3.08 of the Texas Disciplinary Rules of Professional Conduct.

**b. Objections to affidavit of John Mundie—paragraphs 3 through 8**

In their "Objections to Affidavits in Support of Response in Opposition to Defendants' Motion for Summary Judgment," Defendants object to various statements made by Mundie in paragraphs three through eight of his affidavit.

Plaintiffs fail to respond.

Even if Mundie's affidavit were admissible into evidence, which it is not, the Court finds merit to Defendants' objections. Therefore, Defendants' objections in paragraphs three through eight are **SUSTAINED.** The statements are inadmissible for purposes of summary judgment.

**c. Objection to affidavit of Rick Mendoza—paragraph 9**

█ Defendants object to the statement of Plaintiff Rick Mendoza that "[a]fter this procedure was performed no treating physician, or anyone, ever told me that due to pathologic findings of the condition of my bladder cancer upon its removal that there was any reason to question the accuracy of the pathologists' findings with respect to the biopsy tissue from my bladder." Defendants argue that this statement is conclusory and argumentative because it does not create a genuine issue of fact as to whether it was impossible or exceedingly difficult for Plaintiffs to discover the claim within the requisite limitations period.

Plaintiffs fail to respond.

Although this statement may be insufficient to create a genuine issue of fact as to whether it was impossible or exceedingly difficult for Plaintiffs to discover their claim within the requisite limitations period, it is nonetheless relevant. Therefore, the Court **OVERRULES** the objection. The statement will be admitted for purposes of summary judgment.

**d. Objection to affidavit of Rick Mendoza—paragraph 10**

█ Defendants object to the statement of Plaintiff Rick Mendoza that "[t]he earliest date that I learned there was reason to

---

**2.** The trial court has the power and the duty to disqualify counsel when representation of the client is prohibited by the rules of professional conduct. *Ayres*, 790 S.W.2d at 557. However, Rule 3.08 is intended to serve as a disciplinary rule and is not well-suited as a procedural rule of disqualification. *Id.* Thus, while this Court will not disqualify Mundie as counsel in this case, it will prohibit him from testifying as to material facts.

question the accuracy of the pathologic diagnosis of smooth muscle invasion from the bladder biopsy tissue, and reason to question whether I needed to undergo complete removal of my bladder was in February 2005. That was when I was informed by my lawyer that another pathologist had reviewed recuts of the biopsy specimen and did not see smooth muscle invasion." Defendants argue that this statement is conclusory, argumentative, and irrelevant because it raises the "discovery rule," which has been abolished by the Texas legislature. Defendants also argue that the statement is irrelevant to whether it was impossible or exceedingly difficult for Plaintiffs to discover their claim within the requisite limitations period.

Plaintiffs fail to respond.

Although this statement may be insufficient to create a genuine issue of fact as to whether it was impossible or exceedingly difficult for Plaintiffs to discover their claim within the requisite limitations period, it is nonetheless relevant. Therefore, the Court **OVERRULES** the objection. The statement will be admitted for purposes of summary judgment.

#### e. Objection to affidavit of Rick Mendoza—paragraph 11

Defendants object to the statement of Plaintiff Rick Mendoza that "[p]rior to November 27, 2003 I was not aware of any reason to suspect that the pathology diagnosis of November 27, 2001 from the bladder biopsy was inaccurate or misleading." Defendants argue that this statement is conclusory and lacks relevance to the issue of whether it was impossible or exceedingly difficult for Plaintiffs to discover their claim within the requisite limitations period.

Plaintiffs fail to respond.

Although this statement may be insufficient to create a genuine issue of fact as to

whether it was impossible or exceedingly difficult for Plaintiffs to discover their claim within the requisite limitations period, it is nonetheless relevant. Therefore, the Court **OVERRULES** the objection. The statement will be admitted for purposes of summary judgment.

#### f. Objection to affidavit of Rick Mendoza—paragraph 12

■ Defendants object to the statement of Rick Mendoza that "[m]y original interest in pursuing a lawsuit for medical malpractice was only against the Veterans Administration because I believed that its physician had been negligent in not diagnosing my bladder cancer earlier in 2000 or even early 2001." Defendants argue that this statement lacks relevance to the issue of whether it was impossible or exceedingly difficult for Plaintiffs to discover their claim within the requisite limitations period.

Plaintiffs fail to respond.

Although this statement may be insufficient to create a genuine issue of fact as to whether it was impossible or exceedingly difficult for Plaintiffs to discover their claim within the requisite limitations period, it is nonetheless relevant. Therefore, the Court **OVERRULES** the objection. The statement will be admitted for purposes of summary judgment.

#### g. Objection to affidavit of Jeffrey Taber, M.D.—paragraph 13

Defendants object to the admission of Dr. Taber's affidavit for any purpose because the affidavit was not timely filed.

Plaintiffs fail to respond.

This Court granted permission to allow Plaintiffs to supplement the record with Dr. Taber's affidavit. Therefore, the objection is **OVERRULED.**

#### h. Objection to affidavit of Jeffrey Taber, M.D.—paragraphs 14 and 16

 Defendants object to the admission of Dr. Taber's affidavit for any purpose because Plaintiffs failed to attach to it the documents referenced in Dr. Taber's affidavit and upon which he based his testimony. Specifically, Plaintiffs failed to include the pathology diagnosis report and the report of Dr. Epstein.

Plaintiffs fail to respond.

Federal Rule of Civil Procedure 56(e) requires that "[s]worn or certified copies of all papers or parts thereof referred to in an affidavit shall be attached thereto or served therewith." FED.R.CIV.P. 56(e). Plaintiffs did not attach a sworn or certified copy of the papers referred to in Dr. Taber's affidavit, specifically the pathology diagnosis report and Dr. Epstein's report. Thus, the affidavit is technically deficient. While this Court may have reluctantly forgiven this technical defect, provided that the pathology diagnosis report and report of Dr. Epstein were already properly admitted into evidence, only the pathology diagnosis report has been properly admitted into evidence. As Plaintiffs pointed out in their Response to Defendants' Proposed Undisputed Facts, the only copy of Dr. Epstein's report submitted to this Court—Exhibit 6 attached to Defendants' Proposed Undisputed Facts—is inadmissible under Federal Rule of Evidence 803(6). Accordingly, this Court **SUSTAINS** the objection to the extent Dr. Taber's affidavit relies on Dr. Epstein's report.

#### i. Objection to affidavit of Jeffrey Taber, M.D.—paragraph 15

Defendants object to the statement of Dr. Taber that "[t]he pathologist's diagnosis of the biopsy specimen indicated that tumor invaded smooth muscle." Defendants argue that this statement is hearsay and a conclusory medical opinion, which lacks relevance to the issue of whether it was impossible or exceedingly difficult for Plaintiffs to discover their claim within the requisite limitations period. Defendants also argue that before introducing such an opinion, Plaintiffs are required to establish that the witness has the requisite qualifications to interpret a pathology report.

Plaintiffs fail to respond.

This Court agrees with Defendants that the mere statement in the affidavit that "[m]y personal knowledge is based on my physician-patient relationship with Rick Mendoza in 2001," is not particularly enlightening as to Dr. Taber's qualifications as an expert witness. However, it appears that the statements are not those of an expert, but merely statements as to what actions Dr. Taber took in providing care to Plaintiff Rick Mendoza. Moreover, the parties have stipulated to the contents of these statements in the Undisputed Facts and they are easily deducible from the pathology report, which is properly admitted into evidence. Accordingly, the Court **OVERRULES** the objection. The statement is admissible for purposes of summary judgment.

### 2. Statute of limitations

Defendants argue that Plaintiffs filed suit against them three (3) years and ninety-nine (99) days after Defendants' alleged medical negligence, which is well-beyond the absolute two year statute of limitations. Defs.' Mot. for Summ. J. ¶ 8. Defendants argue that Plaintiffs' situation does not fall within the "open courts" exception to the statute of limitations, and further that the "discovery rule," that is whether the plaintiff knew or should have known of the alleged tort within the limitations period, does not apply in the instant case. *Id.* ¶ 9; Reply to Pls.' Resp. in Opp'n to Mot. for Summ. J. of Defs. ¶¶ 6–9 ("Defs.' Reply"). Finally, Defendants argue

that Plaintiffs have no colorable claim that the absolute two year statute of limitations is unconstitutional. Defs.' Mot. for Summ. J. ¶¶ 10–11.

Plaintiffs respond by arguing that Defendants have offered no summary judgment evidence that Plaintiffs, by reading the pathology report of December 15, 2001, should have known that the pathology report of November 27, 2001 contained a misdiagnosis and/or misreading. Pls.' Resp. 3. Plaintiffs further argue that none of Plaintiff Rick Mendoza's treating physicians ever told him that there was reason to suspect that the pathology report of November 27, 2001 was incorrect. *Id.* at 4. Finally, Plaintiffs argue that they are entitled to the "open courts" exception to the absolute two year statute of limitations. *Id.* at 1, 5.

■■■ Texas Revised Civil Statutes Annotated, article 4590i, section 10.01 ("article 4590i"), which governs the instant case, provides that claims for medical negligence must be brought within two years from: (1) the occurrence of the breach or tort; (2) the last date of the relevant course of treatment; or (3) the last date of the relevant hospitalization. *Rotella v. Pederson,* 144 F.3d 892, 895 (5th Cir.1998); *Shah v. Moss,* 67 S.W.3d 836, 841 (Tex.2001). A plaintiff may not choose which of the three dates above is most favorable to his or her case. *Shah,* 67 S.W.3d at 841. "Rather, if the date the alleged tort occurred is ascertainable, limitations must begin on that date," and inquiry into the second and third categories is unnecessary. *Id.* In enacting article 4590i, the legislature specifically rejected the "discovery rule," which would have begun the running of the limitations period from the time the patient knew or should have known of an alleged injury, in favor of a two year limitation "without the allowance of any ... court-developed exceptions." *O'Reilly v. Wiseman,* 107 S.W.3d 699, 703 (Tex.App.

2003); *see also Jennings v. Burgess,* 917 S.W.2d 790, 793 (Tex.1996) (holding that "[t]he statute abolishes the discovery rule in cases governed by article 4590i").

■■■ Despite this strict two year limitations period, the Texas Constitution provides that people who bring common law claims will not unreasonably or arbitrarily be denied access to the courts. TEX. CONST. art. 1, § 13; *Bejarano v. Wyeth,* 2003 WL 24281169, **5–6, 2003 U.S. Dist. LEXIS 16776, at *17–18 (S.D. Tex. June 27, 2003); *Shah,* 67 S.W.3d at 841–42. This doctrine, known as the "open courts" doctrine, will invalidate as unconstitutional, a statute that unreasonably or arbitrarily denies a person the right to obtain redress for injuries. *Shah,* 67 S.W.3d at 842. In other words, Texas' "open courts provision protects a person from legislative acts that cut off that person's right to sue before there is a reasonable opportunity to discover the wrong and bring suit." *Id.*

Resolution of the instant case involves application of this open courts doctrine to the statute of limitations in article 4590i, which application "has not been a model of clarity" in the past. *O'Reilly,* 107 S.W.3d at 702. "In an attempt to bring some clarity to this confusing area of the law," a Texas Court of Appeals recently examined the development and application of the open courts doctrine to article 4590i. *Id.* After examining Texas Supreme Court precedent and related case law, the Texas Court of Appeals essentially deduced a two-part test in analyzing article 4590i under the open courts doctrine. *Id.* at 707.

■■■ In order to establish that the open courts doctrine invalidates the two year statute of limitations, a plaintiff must first show that it was impossible or exceedingly difficult to discover the alleged wrong and bring suit within the two year period. *Id.* (citing *Shah,* 67 S.W.3d at 846–47); *see*

*also Bejarano,* 2003 WL 24281169, \*\*5–6, 2003 U.S. Dist. LEXIS 16776, at \*17–18 (Texas courts have interpreted "reasonable opportunity" to mean that a "showing must be made that due to the nature of the claim it was impossible or exceedingly difficult to discover the alleged wrong and bring suit within the two-year period."). Once the plaintiff makes this showing, the court must then determine whether restricting the plaintiff's right to redress is reasonable when weighed against the bases and purposes of the statute of limitations. *Id.* If the balancing weighs in favor of the plaintiff's right to redress, the plaintiff has succeeded in establishing a prima facie open courts violation. *Id.* Only then will a court allow the plaintiff to show that he or she used diligence to bring suit within a reasonable time following discovery of the injury, rather than hold the plaintiff to the two year statute of limitations. *Id.*

The Texas Supreme Court was presented with an open courts challenge in the context of article 4590i in *Jennings v. Burgess. Jennings,* 917 S.W.2d at 792. In *Jennings,* the defendant doctor diagnosed the plaintiff's nasal legion as a basal cell carcinoma and then referred her to a general practitioner, rather than treat her himself. *Id.* The plaintiff sued the defendant for negligence in referring her to a general practitioner rather than an appropriate specialist. *Id.* The Texas Supreme Court upheld the trial court's decision to grant summary judgment against the plaintiff for failure to file suit within the two year statute of limitations. *Id.* at 794. The court held that the date of the alleged tort, specifically the defendant's referral of the plaintiff to a general practitioner rather than a specialist, was ascertainable and thus the two year statute of limitations began to run from that date. *Id.* The Texas Supreme Court did not reach the open courts challenge because it found that the since the plaintiff knew that her referral was to a general practitioner rather than a specialist, she had a reasonable opportunity to discover the alleged wrong and bring suit within the two year limitations period. *Id.* Finally, the Court rejected any argument on behalf of the plaintiff that she could not reasonably have known that she had a possible suit against the defendant within the two year limitations period because it was not until much later that someone else told her that previous physicians had mismanaged her treatment. *Id.* It was enough for the court that the plaintiff knew of the alleged negligence on the date it occurred. *Id.*

A Texas court again dealt with an open courts challenge in the context of article 4590i in a case strikingly similar to the instant one. In *O'Reilly v. Wiseman,* the plaintiff underwent a mammogram on April 20, 1999, which the defendant doctor interpreted as negative for breast cancer. *O'Reilly,* 107 S.W.3d at 701. The plaintiff then underwent a series of other exams, beginning on June 9, 2000, wherein her mammograms were also interpreted as negative for breast cancer. *Id.* On December 27, 2000, she was diagnosed with breast cancer. *Id.* Thereafter, the plaintiff initially contacted an attorney to investigate her possible claims relating to the June 9, 2000 misreading and did not consider that the April 20, 1999 screening might have been misread by the defendant. *Id.* However, after consulting an expert who indicated that the April 20, 1999 mammogram may also have been misread, the plaintiff filed suit. *Id.*

Upon conducting an in-depth analysis of Texas case law regarding the effect of the open courts doctrine on the statute of limitations, the Texas Court of Appeals affirmed the trial's court's decision to grant summary judgment against the plaintiff for failing to file suit within the appropriate limitations period. *Id.* at 708–09. The

court calculated the statute of limitations from the original reading of the report on April 20, 1999, and found that after the plaintiff was diagnosed with breast cancer on December 27, 2000, she still had four months (December 2000 to April 2001) remaining to file suit. *Id.* at 708. In sum, the court calculated the limitations period from the date of the alleged misreading, rather than from the date of the diagnosis. *Id.* Thus, it was neither impossible nor exceedingly difficult for the plaintiff to discover her injury within the two-year limitations. *Id.* at 708. The court rejected the plaintiff's argument that she did not know of her possible cause of action against the defendant until her mammograms were read by an expert eight months after the diagnosis of her cancer. *Id.* at 709. Finally, the court acknowledged the harsh result but reiterated that it was the legislature's intent to limit the time insureds are exposed to liability. *Id.* at 708–09; *see also Bejarano,* 2003 WL 24281169, **5–7, 2003 U.S. Dist. LEXIS 16776, at *17–20 (discussing *O'Reilly* ).

In the instant case, Plaintiffs allege that Defendants were negligent in: (1) misreading or misinterpreting pathology specimens of biopsied bladder tissue; (2) incorrectly interpreting bladder biopsies as having smooth muscle invasion when they did not; and (3) incorrectly reporting pathology findings to the urologist. Pls.' First Am. Compl. 4. The date upon which these alleged acts of negligence occurred is readily ascertainable. That is, Defendant Murphy's report containing the allegedly faulty diagnosis was issued on November 28, 2001. Therefore, under a straightforward application of article 4590i, the limitations period would have started to run on November 28, 2001 and expired on November 28, 2003.

However, because Plaintiffs have raised an open courts challenge, this Court must apply the test set forth in *Shah* and clarified in *O'Reilly.* Specifically, this Court must inquire into whether it was impossible or exceedingly difficult for Plaintiffs to discover the alleged wrong and bring suit within the two year statute of limitations. This Court finds that it was not.

 As in *O'Reilly,* the date upon which the alleged acts of negligence occurred is readily ascertainable as November 28, 2001, when Defendant Murphy executed the report containing the alleged misdiagnosis. As in *O'Reilly,* it is clear that Plaintiffs knew on or before the expiration of the two year limitations period that some form of medical negligence had occurred. Specifically, Plaintiffs knew that some form of medical negligence had occurred on or before February 7, 2003 because that is when they filed their Notice of Claim against the United States of America for medical negligence. Therefore, under the rationale in *O'Reilly,* Plaintiffs had at least nine months between February 7, 2003 and November 28, 2003 to file suit against Defendants Murphy and Allen. As such, it was neither impossible nor exceedingly difficult for Plaintiffs to discover their claims within the requisite statute of limitations, and thus the Plaintiffs have not demonstrated an open courts violation.

Plaintiffs' arguments that (1) it is somehow the Defendants' burden to show that Plaintiffs should have known that by reading the December 15, 2001 report there was an error in the November 28, 2001 report and/or (2) Plaintiffs treating physicians did not tell him there was reason to suspect the accuracy of the report of November 28, 2001, are similarly without merit. As stated in *Jennings, O'Reilly,* and the case law cited above, the test is not whether the Plaintiffs knew or should have known of the alleged negligence within the limitations period, but whether it was impossible or exceedingly difficult to

discover the nature of the alleged negligence within the limitations period. This test was illustrated in *O'Reilly*, a case strikingly similar to the instant one. As applied, it indicates that Plaintiffs did not file suit against Defendants until three years and ninety-nine days after the alleged negligence occurred. Therefore, it is irrelevant if and when another doctor told Plaintiffs that the November 28, 2001 report may have contained faulty information.

Finally, Plaintiffs' reliance on *Hellman v. Mateo*, 772 S.W.2d 64 (Tex.1989) is misplaced. First and foremost, as explained in *O'Reilly*, *Hellman* is anomolous in light of more recent Texas Supreme Court holdings and thus unreliable as precedent. *O'Reilly*, 107 S.W.3d at 705–06. Second, there exists an important factual distinction between this case and *Hellman*. In *Hellman*, a question of fact existed as to whether the plaintiffs knew or should have known about the misdiagnosis before limitations period ran. *Hellman*, 772 S.W.2d at 66. Here, it was neither impossible nor exceedingly difficult for Plaintiffs to discover their claim within the limitations period because Plaintiff Rick Mendoza suspected that there had been some malpractice during his treatment and filed a Notice of Claim on February 7, 2003— well within the two year statute of limitations.

Because Plaintiffs did not file within the appropriate limitations period and have not demonstrated an open courts violation, Defendants' Motion for Summary Judgment is granted.

### D. Challenge to Plaintiffs' Expert Report

Because Plaintiffs failed to file suit within the appropriate limitations period, the Court need not address Defendants' challenge to Plaintiffs' expert report. The Motion to Challenge is denied as moot.

### III. CONCLUSION

In light of the foregoing, Plaintiffs' Motion for Reconsideration of Order (Doc. No. 72) is **GRANTED** but the prior order is adhered to; Plaintiffs' First Supplemental Motion for Reconsideration of Order (Doc. No. 74) is **GRANTED** but this Court holds that it has jurisdiction to hear the case; Defendants' Motion for Summary Judgment (Doc. No. 50) is **GRANTED;** and Defendants' Motion to Challenge Expert Report (Doc. No. 52) is **DENIED** as moot.

The clerk shall close the case.

**SO ORDERED.**