**Affirmed; Opinion Filed February 4, 2014**



In The

# Court of Appeals
# Fifth District of Texas at Dallas

### No. 05-11-01615-CV

## STUART THOMAS, Appellant
## V.
## CARNAHAN THOMAS, LLP, FREDERICK HOELKE,
## ROY ROMO & WILLIAM PETERS, Appellees

### On Appeal from the 68th Judicial District Court
### Dallas County, Texas
### Trial Court Cause No. DC-09-11220-C

## MEMORANDUM OPINION
Before Justices Moseley, Bridges, and Lang-Miers
Opinion by Justice Bridges

Appellant Stuart Thomas ("Thomas") appeals from two summary judgments entered in favor of appellees Carnahan Thomas, L.L.P., Frederick Hoelke, Roy Romo and William Peters (collectively referred to as the "Attorneys"). In two issues, Thomas contends the trial court erred in granting the Attorneys' motions for summary judgment concerning: (1) his negligence claim and (2) his claim for breach of fiduciary duty. We affirm.

### Background

*Employment Agreements*

Thomas distributed and sold mushrooms produced by the Pia brothers and their companies out of Pennsylvania ("the Pia Entities"). Thomas entered into a series of agreements

with the Pia Entities that formed and governed four separate distribution entities in Dallas, Houston, New Orleans, and Atlanta.

Thomas entered into distributor agreements and employment agreements with each of the four distribution entities in 1998. In addition to his ownership in the distribution entities, Thomas was the managing administrative member and a salaried employee. The employment agreements provided that, from the date they were signed until two years after Thomas's employment with the entities ceased, Thomas would not participate in any other business engaged in "the business of growing, packaging, distributing, marketing or selling fresh produce products of any kind, including without limitation, mushrooms" within the specified city or the 100 miles surrounding it. The employment agreements were governed by Pennsylvania law.

### Litigation Between Thomas & The Pia Entities

The settlement of the first lawsuit[1] between Thomas and the Pia Entities resulted in the 2003 modification agreement, which amended the original 1998 agreements. With respect to the employment agreements, the parties agreed the Pia companies would be third-party beneficiaries of the non-compete agreements and that the modification agreement would be governed by Texas law. The parties did not amend the choice-of-law provision in the employment agreements.

The second litigation,[2] filed by the Pia Entities in the 95th district court in Dallas, ended with a settlement agreement that required an independent valuation of the distribution entities. As part of the settlement process, Thomas's employment with the four distribution entities was

---

[1] In the first lawsuit, filed in the County Court at Law No. 4 of Dallas County, the Pia Entities sued Thomas alleging: (1) the distribution entities breached the distributor agreements and (2) two of the distribution entities breached the partnership agreements and two breached the LLC agreements. The Pia Entities also sought an injunction with regard to the importing, purchasing, packaging, marketing, distributing, delivering, selling, supplying, and advertising of products and to prevent certain business dealings with third parties.

[2] In the second lawsuit, the Pia Entities again alleged: (1) the distribution entities breached the distributor agreements and (2) two of the distribution entities breached the partnership agreements and two breached the LLC agreements. The Pia Entities further alleged Thomas and the distribution entities breached: (1) the modification agreement, (2) their duty of loyalty, (3) their duty of care, (4) the settlement agreement, and (5) the employment contract. The Pia Entities also sought an accounting and requested injunctive relief to enforce the covenant not to compete.

terminated on December 12, 2004. At that time, the non-compete agreements went into effect and would terminate by their own terms on December 12, 2006. Thomas disagreed with the results of the valuation and filed another lawsuit in March 2005 against the Pia Entities in the 134th district court that was transferred into and consolidated with the 95th district court case. Thomas's lawsuit challenged the validity of the settlement agreement on multiple grounds and also sought a declaratory judgment that the four non-compete agreements were unenforceable. The lawsuit failed to name the distribution entities as parties to the lawsuit.

### Thomas Hires The Attorneys

Thomas hired Hoelke and entered into a representation agreement with regard to his "claim for the dissolving and or termination of the four separate non-compete agreements." Thomas also approved a fee-splitting arrangement when Hoelke brought in associate counsel, Peters of Carnahan Thomas, L.L.P. ("Carnahan") and Romo,[3] to assist with the case.

On June 24, 2005, the Attorneys filed a motion for partial summary judgment on behalf of Thomas, seeking a declaration that the four non-compete agreements were unenforceable under the laws of Texas, Louisiana, and Georgia. The Pia Entities then filed suit in a Pennsylvania court, seeking a declaration that the non-compete agreements were valid and enforceable and also seeking an injunction against Thomas to prevent him from violating the non-compete agreements. In the 95th district court, the Pia Entities defeated summary judgment by arguing that the distribution entities were necessary parties to any declaration regarding the employment agreements. On that same day, the parties agreed to a scheduling order stating that no new parties could be added except on motion for leave showing good cause. The Attorneys moved for leave to add the distribution entities, but the Pia Entities argued the Attorneys had

---

[3] The record reflects Marc Levy was also hired as associate counsel, holding joint responsibility with Romo. Levy is not a party to the litigation at issue here.

failed to sue the distribution entities, giving the Pennsylvania court dominant jurisdiction. The trial court then rejected the Attorneys' motion for leave to add the distribution entities to the case. The 95th district court case remained pending.

Because they believed the non-competes to be governed by Texas law and unenforceable as a matter of Texas law, in the summer of 2005, the Attorneys advised Thomas to start up his business and to compete. Thomas began operating a competing business called Thomas Mushroom & Specialty Produce in Dallas in March 2006.

On December 12, 2006, the non-compete agreements expired by their own terms. Thomas had not been enjoined from competition up until the point of their natural expiration. Several months later, Thomas agreed to a comprehensive settlement agreement ("CSA") of all his disputes with the Pia Entities. Although the non-compete agreements had already expired, the CSA included two new non-compete agreements governing the Houston and Atlanta markets. Thomas's new covenants not to compete were described as "a material consideration for their obligations and promises contained in this [CSA] and valuable to the Pia Parties." In exchange for that consideration, the Pia Entities released their claims against Thomas. In addition to the non-compete litigation, the CSA resolved other litigation between Thomas and the Pia Entities that was still pending in various trial, appellate, and arbitration forums in at least three states and two federal courts.

### Litigation Between Thomas & The Attorneys

Thomas filed this lawsuit on August 28, 2009, alleging that, through its former employee Peters, Carnahan had committed malpractice in handling his non-compete case. Specifically, Thomas alleged Peters, Hoelke, and Romo committed legal malpractice when they failed to "add the produce distribution companies to the [95th district court case], failed to file the non-compete

claims in arbitration as required by the employment agreements, and failed to move to compel arbitration in the Pennsylvania case."

Carnahan filed a general denial and, on January 28, 2010, filed a motion for leave to designate responsible third parties, which included Hoelke and Romo. On May 3, 2010, Thomas filed his first amended petition, adding Hoelke and Romo as defendants.

On November 11, 2010, Carnahan and Peters filed their first amended traditional and no-evidence motion for summary judgment. Four days later, Romo and Hoelke filed a virtually identical traditional and no-evidence motion for summary judgment. Shortly thereafter, Thomas filed a third amended petition, adding a cause of action for breach of fiduciary duty. The trial court denied the Attorneys' motions for summary judgment with respect to the statute of limitations grounds, but granted the motions on all other grounds.

On July 1, 2011, Carnahan and Peters filed a traditional motion for summary judgment, arguing the breach of fiduciary duty claim was barred by the statute of limitations. On July 25, 2011, Hoelke and Romo also filed a traditional motion for summary judgment that the breach of fiduciary claim was barred by the statute of limitations. Thomas filed his response and, on August 15, 2011, the trial court granted the Attorneys' motions, disposing of all of Thomas's claims against the Attorneys.

## Analysis

### *Standard of Review*

The standards for reviewing a traditional summary judgment are well established. The party moving for summary judgment has the burden of showing no genuine issue of material fact exists and that it is entitled to judgment as a matter of law. *See* TEX. R. CIV. P. 166a(c); *Nixon v. Mr. Prop. Mgmt. Co.,* 690 S.W.2d 546, 548 (Tex. 1985). In deciding whether a disputed material fact issue exists, precluding summary judgment, evidence favorable to the non-movant

will be taken as true. *Nixon,* 690 S.W.2d at 548–49. Further, every reasonable inference must be indulged in favor of the non-movant and any doubts resolved in its favor. *Id.* A motion for summary judgment must expressly present the grounds upon which it is made and must stand or fall on those grounds alone. *McConnell v. Southside Indep. Sch. Dist.,* 858 S.W.2d 337, 341 (Tex. 1993); *Espalin v. Children's Med. Ctr. of Dallas,* 27 S.W.3d 675, 688 (Tex. App.—Dallas 2000, no pet.).

We review a no-evidence summary judgment under the same legal sufficiency standard used to review a directed verdict. *See* TEX. R. CIV. P. 166a(i); *Gen. Mills Rests., Inc. v. Tex. Wings, Inc.,* 12 S.W.3d 827, 832–33 (Tex. App.—Dallas 2000, no pet.). Thus, we must determine whether the nonmovant produced more than a scintilla of probative evidence to raise a fact issue on the material questions presented. *Gen. Mills,* 12 S.W.3d at 833. When analyzing no-evidence summary judgments, we consider the evidence in the light most favorable to the nonmovant. *Id.*

When the motion for summary judgment presents both no-evidence and traditional grounds, appellate courts usually review the no-evidence grounds first. *Hall v. Douglas*, 380 S.W.3d 860, 867 (Tex. App.—Dallas 2012, no pet.).

### Negligence

Thomas first complains the trial court erred in granting the Attorneys' traditional and no-evidence motions for summary judgment as to his claim for negligence (legal malpractice). As we have already noted, the trial court denied those motions "only with respect to the statute-of-limitations grounds," but granted the motions on "all other grounds." The other grounds raised by the Attorneys in their traditional motion were:

1. Thomas's claims fail because he cannot prove that the Attorneys' alleged conduct, even if true, was a proximate cause of Thomas's alleged damages;

2. Thomas's claims fail because he cannot prove a "suit within a suit;"

–6–

3. Thomas's claims fail because the Atlanta distribution entity was not subject to personal jurisdiction in Texas and, therefore, could not have been joined in the 95th district court lawsuit irrespective of any alleged failure of the Attorneys to join the distribution entities as parties;

4. Thomas cannot prove lost profits with that degree of certainty which the law demands; and

5. Thomas lacks standing and/or capacity to recover for lost profits.

In their no-evidence motion, the Attorneys argued Thomas had no evidence of lost profits.

When multiple grounds are raised in the summary judgment motion and the trial court does not specify the ground or grounds relied upon for its ruling, we will affirm the summary judgment if any of the grounds advanced in the motion are meritorious. *McAfee, Inc. v. Agilysys, Inc.,* 316 S.W.3d 820, 825 (Tex. App.—Dallas 2010, no pet.) (citing *Carr v. Brasher,* 776 S.W.2d 567, 569 (Tex.1989)). Because it is dispositive, we first turn to the Attorneys' no-evidence ground—lost profits. *See id.*; *see also Hall*, 380 S.W.3d at 867.

To recover pursuant to his malpractice claim, Thomas must demonstrate that (1) the Attorneys owed a duty to him; (2) the Attorneys breached that duty; (3) the breach proximately caused Thomas's injuries; and (4) damages occurred. *Belt v. Oppenheimer, Blend, Harrison & Tate, Inc.*, 192 S.W.3d 780, 783 (Tex. 2006). Here, Thomas's claimed damages are lost profits. Lost profits are damages for the loss of net income to a business and reflect income from lost business activity, less expenses that would have been attributable to that activity. *Bowen v. Robinson*, 227 S.W.3d 86, 96 (Tex. App.—Houston [1st Dist.] 2006, pet. denied) (citing *Miga v. Jensen*, 96 S.W.3d 207, 213 (Tex. 2002)). In other words, lost profits must be based on net profits, not gross revenues. *Parkway Dental Assoc., P.A. v. Ho & Huang Prop., L.P.*, 391 S.W.3d 596, 609 (Tex. App.—Houston [14th Dist.] 2012, no pet.); *see also Texaco, Inc. v. Phan*, 137 S.W.3d 763, 771 (Tex. App.—Houston [1st Dist.] 2004, no pet.) (citing *Holt Atherton Indus., Inc. v. Heine*, 835 S.W.2d 80, 83 n.1 (Tex. 1992)). "Net profits" are the difference

between a business's total receipts and all the expenses incurred in carrying on the business. *Id.* (citing *Turner v. PV Int'l Corp.*, 765 S.W.2d 455, 465 (Tex. App.—Dallas 1988, writ denied)).

Recovery for lost profits does not require that the loss be susceptible of exact calculation. *Holt Atherton*, 835 S.W.2d at 84. However, the injured party must do more than show they suffered some lost profits. *Id.*; *Parkway Dental*, 391 S.W.3d at 608. The amount of the loss must be shown by competent evidence with reasonable certainty. *Texas Instruments, Inc. v. Teletron Energy Mgmt., Inc.*, 877 S.W.2d 276, 279 (Tex. 1994); *White v. Southwestern Bell Tel. Co.*, 651 S.W.2d 260, 262 (Tex. 1983); *Total Clean, L.L.C. v Cox Smith Matthews, Inc.*, 330 S.W.3d 657, 663 (Tex. App.—San Antonio 2010, pet. denied). What constitutes reasonably certain evidence of lost profits is a fact intensive determination. *Holt Atherton*, 835 S.W.2d at 84. But, once a party has chosen a particular method for measuring their lost profits, they must provide a complete calculation. *Id.* at 85; *Parkway Dental*, 391 S.W.3d at 608. At a minimum, opinions or estimates of lost profits must be based on objective facts, figures, or data from which the amount of lost profits can be ascertained. *Holt Atherton*, 835 S.W.2d at 85; *Total Clean*, 330 S.W.3d at 663.

"Profits which are largely speculative, as from an activity dependent on uncertain or changing market conditions, or on chancy business opportunities, or on promotion of untested products or entry into unknown or unviable markets, or on the success of a new and unproven enterprise, cannot be recovered." *Texas Instruments*, 877 S.W.2d at 279; *Total Clean*, 330 S.W.3d at 663. Factors like these and others which make a business venture risky in prospect preclude recovery of lost profits in retrospect. *Id.* When a review establishes the profits are not reasonably certain, therefore, the injured party has failed to prove lost profits as a matter of law. *Parkway Dental*, 391 S.W.3d at 608.

As we have already noted, the Attorneys argued in their no-evidence motion that Thomas had "no evidence of any lost profits." In response to the motion and on appeal, Thomas argued he is entitled to $2,364,622.20 in lost profits,[4] claiming the losses resulted from his inability to compete in the Houston and Atlanta markets for a period of 33 months (December 12, 2006 to September 2009)[5] after signing the new non-competes in the 2007 CSA. In response, the Attorneys argued that his summary judgment evidence does not raise a fact issue on whether he sustained lost profits because the original non-competes terminated by their own terms on December 12, 2006. Our review of the record shows the CSA, which contained the new non-competes as to Houston and Atlanta went into effect on August 27, 2007. Thus, by their terms, the new non-competes did not prevent Thomas from competing in Houston and Atlanta from December 12, 2006 to August 27, 2007 and should not be included in any lost profit calculations as a matter of law.[6]

We next turn to Thomas's use of his Dallas profits as an indicator of his lost profits in Atlanta and Houston. According to his affidavit, Thomas averaged profits of $44,511.88 per month in Dallas for the years 2007 and 2008. Yet, we note for the purposes of calculating his alleged lost profits in Houston and Atlanta, Thomas adds his $200,000 salary for the Dallas market back to the net, claiming it is not an expense, but part of his loss, since he is the one who suffered the damages. However, Thomas did not provide any evidence due to his failure to direct us to any tax returns or balance sheets, evidencing the salary as a loss. In addition, the 2009 Dallas net profits are less than half the net profits in 2008, yet Thomas excludes those from

---

[4] Thomas fails to state the amount of lost profits sought in his brief before this Court, however, we have gleaned the amount sought from the record. Specifically, Thomas states in his second amended disclosures that the lost profits for Houston and Atlanta are $2,364,622.20.

[5] Again, Thomas does not specify the time period for which he is seeking lost profits in his brief. However, Thomas's affidavit, attached to his response to the Attorneys' motions for summary judgment, states the 33 months begins on December 12, 2006 and ends at the beginning of September 2009.

[6] In fact, the record reflects Thomas started competing in Dallas in March 2006 even though the original non-competes had not yet expired.

the average calculation.[7] Thus, his average is not based on objective data upon which lost profits may be ascertained. *Holt Atherton*, 835 S.W.2d at 84.

After arriving at the averaged Dallas profits of $44,511.88 per month, Thomas then uses the *revenues* from the Dallas, Houston and Atlanta operations for the years 2001-2004 to calculate a ratio of profitability in comparison to his net profits in Dallas from 2007 to 2008. However, as we have already stated, lost profits must be based on net profits, not gross revenues. *See Texaco*, 137 S.W.3d at 771. Thomas's use of past revenues as historical evidence in support of his lost profits calculation is, therefore, improper. *See id.*; *see also Turner v. PV Intern. Corp.*, 765 S.W.2d 455, 465 (Tex. App–Dallas 1988, writ denied) (stating proper measure of damages for lost profits is *net profits*).

Further, the Attorneys argue the summary judgment record shows Houston and Atlanta lost money from September 30, 2003 to September 30, 2004.[8] Thus, they argue there were no net profits for at least twelve months prior to the time Thomas stopped working for the distribution entities in December 2004. In his November 14, 2005 deposition, attached to the Attorney's motion for summary judgment, Thomas admitted the distribution entities were "close to economic death" for the period spanning January 2000 through October 6, 2004. In a later deposition,[9] he again admitted the distribution entities were not profitable. He went on to testify that profits varied in each location based on the market and whether the supply was efficient. With respect to Atlanta, Thomas stated it "was always a stepchild because there [were] too many

---

[7] In his response to Carnahan's interrogatories, Thomas provides the following net profits for Dallas:

    2007–$298,724.67

    2008–$369,559.70

    2009–$164,321.21

    2010 through May–$103, 125.98

[8] The profit and loss statement for the year ending September 30, 2004 shows Atlanta lost $38,130.91 and that Houston lost $47,205.42.

[9] This deposition is dated April 4, 2007.

suppliers" and "[s]o it was a challenging city." He also admitted Atlanta made less than the rest of the distribution entities and sometimes lost money. Finally, Thomas stated "profits were always based upon the competition in the market." Thus, Thomas failed to provide reasonably certain evidence that he would then make money in those markets if he had opened his own distribution companies in Atlanta and Houston.

Thomas also did not present summary judgment evidence that he could have actually opened competing businesses in Atlanta and Houston in 2006. *See*, *e.g.*, *South Plains Switching, Ltd. Co. v. BNSF Ry. Co.*, 255 S.W.3d 690, 705-06 (Tex. App.—Amarillo 2008, pet. denied) (when there was no testimony about other necessary expenses of doing business such as depreciation, payroll expenses, administrative expense, equipment expenses, and maintenance expenses, the evidence fell short of showing lost profits with reasonable certainty); *Paternostro v. Pre-Paid Legal Services, Inc.*, No. 05-01-01208-CV, 2002 WL 987952 at *1-2 (Tex. App.— Dallas 2002, May 15, 2002, pet. denied) (affirming grant of motion for summary judgment when Paternostro failed to produce evidence he could expect to generate sales on same levels as Pre-Paid associates). The Attorneys contend Thomas did not provide: (1) how much the expansion and inventory would cost, (2) how he would finance the Houston and Atlanta operations, (3) a basis for the profitability of the Atlanta and Houston markets, (4) total expenses for the Atlanta and Houston markets, (5) evidence of a customer base in Houston and Atlanta, (6) cost of goods, and (7) his ability to compete in the marketplace. Without this kind of evidence before us, we conclude Thomas's claim for lost profits is merely speculative, incapable of being calculated with reasonable certainty. *See Texas Instruments*, 877 S.W.2d at 279; *Total Clean*, 330 S.W.3d at 663.

In sum, we conclude Thomas has failed to provide reasonably certain evidence in response to the Attorneys' no-evidence motion that he could have operated in Houston or Atlanta

and what the profits would have been in those markets if he had operated. Thomas's alleged lost profits are not susceptible of being established by the degree of certainty which the law requires. *See id.* Therefore, under the applicable standard of review, the summary judgment evidence filed by Thomas in response to the Attorneys' no-evidence motion did not raise a genuine issue of fact as to whether he suffered any lost profits. *See Parkway Dental*, 391 S.W.3d at 609. Because Thomas failed to produce any competent evidence that profits were reasonably certain, there is no evidence to support his claim for lost profits. *See Total Clean*, 330 S.W.3d at 663. The trial court properly granted the Attorneys' no-evidence motion for summary judgment. *See id*. We overrule appellant's first issue.

### Breach of Fiduciary Duty

Thomas next complains the trial court erred in granting the Attorneys' traditional motions[10] for summary judgment on statute of limitations grounds as to his claim for breach of fiduciary duty. The Attorneys' motions argued the filing of Thomas's breach of fiduciary duty claim did not relate back to prior petitions because, according to Thomas, the breach of fiduciary duty claim was a new, distinct, and different transaction. In response to the motion and on appeal, Thomas argued the trial court erred, because the Attorneys: (1) failed to show that the breach of fiduciary duty did not relate back to the Bexar County District case;[11] (2) did not conclusively prove that the breach of fiduciary duty accrued in September 2006; and (3) fraudulently concealed their breach of fiduciary duty.

When a party moves for summary judgment on limitations grounds, that party has the burden of conclusively establishing that defense. *Jennings v. Burgess*, 917 S.W.2d 790, 793 (Tex. 1996). Generally, a cause of action accrues and limitations begin to run when facts exist

---

[10] Carnahan Thomas and Peters filed their motion on July 1, 2011. Hoelke and Romo filed a substantially similar motion on July 25, 2011.

[11] The Bexar County malpractice claim was later transferred to Dallas County.

that authorize a claimant to seek judicial relief. *Schneider Nat. Carriers, Inc. v. Bates,* 147 S.W.3d 264, 279 (Tex. 2004).

Thomas filed his legal malpractice suit against the Attorneys on August 28, 2009. Thomas first brought his claim for breach of fiduciary duty when he filed his third amended petition on November 15, 2010. According to Thomas,[12] his breach of fiduciary duty claim was based on the facts that "the fee agreement provides for a contingent fee, that the [Attorneys] did not satisfy the contingency. . . , that the [Attorneys] instructed Thomas to violate the [non-competes] in order to demand unearned fees, and that Thomas paid them."

The record reflects that, in the summer of 2005, the Attorneys advised Thomas to start a new mushroom distribution business.[13] In his October 28, 2010 deposition and his subsequent affidavit, Thomas testified he started competing in Dallas in March 2006. The fees that Thomas claims the Attorneys demanded and that he paid, but were unearned, were paid, starting September 10, 2006. The Attorneys, therefore, argued the breach of fiduciary duty claim accrued no later than September 10, 2006. See *Rodriguez v. Cromwell,* 319 S.W.3d 751, 755 (Tex. App.—El Paso 2009, pet. denied); *S.V. v. R.V.,* 933 S.W.2d 1, 4 (Tex. 1996) (a cause of action accrues when a wrongful act causes an injury, regardless of when the plaintiff learns of that injury or whether all resulting damages have yet to occur). Accordingly, they argued Thomas was required to file his claim for breach of fiduciary duty no later than September 10, 2010. *See* TEX. CIV. PRAC. & REM. CODE ANN. §16.004(a)(5) (setting a four-year statute of limitations period for breach of fiduciary duty claims). Because Thomas did not file his breach

---

[12] Before filing their motions for summary judgment on limitations grounds, the Attorneys filed their initial motion for summary judgment on the breach of fiduciary duty claim, asserting Thomas had adequate time for discovery and that he lacked evidence of one or more elements of his claim. In his response to the Attorneys' initial motion for summary judgment on breach of fiduciary duty, Thomas set out the "key facts" regarding his breach of fiduciary duty claim. The trial court denied the Attorneys' initial motion for summary judgment on the breach of fiduciary duty claim.

[13] The affidavit of Peters indicates he was the one to advise Thomas to start a new business in June of 2005. Thomas also testified in his affidavit that Peters told him to start his business in Dallas even though it would violate the non-compete clause.

of fiduciary duty claim until November 10, 2010, the Attorneys contended the claim was barred by limitations as a matter of law.

*Relation Back To The Bexar County Lawsuit*

To refute the contention that the claim was barred by limitations, Thomas argued that the Attorneys failed to show the breach of fiduciary duty did not relate back to the Bexar County District case that he filed on September 15, 2009. In that lawsuit, Thomas filed counterclaims against Hoelke, Peters, and Romo, alleging claims for legal malpractice and money had and received. Thomas argues both claims are based on the facts payments were made to the Attorneys, and the Attorneys had not earned the money because they had not satisfied the contractual contingency. We disagree.

Under Texas law, the test for determining whether a claim asserted in an amended pleading filed after limitations has run relates back to an earlier, timely-filed claim focuses on whether the cause of action alleged in the amended petition is wholly based upon and grows out of a new, distinct, or different transaction or occurrence. *Meisler* v. *Republic of Tex. Sav. Ass'n,* 758 S.W.2d 878, 881 (Tex. App.—Houston [14th Dist.] 1988, no writ); *see also* TEX. CIV. PRAC. & REM. CODE ANN. §16.068 (a cause of action is not subject to a plea of limitations unless the amendment or supplement is wholly based on a new, distinct, or different transaction or occurrence). A transaction is defined as a set of facts that gives rise to the cause of action premised thereon. *Walker* v. *Presidium Inc.,* 296 S.W.3d 687, 695 (Tex. App.—EI Paso 2009, no pet.).

In his response to the Attorneys' initial motions for summary judgment regarding Thomas's claim for breach of fiduciary duty, Thomas made the following relevant statements:

• The breach of fiduciary duty claim is grounded on different facts than is the malpractice claim;

–14–

• [The Attorneys'] argument fails because the crux of the malpractice claim is not the same as the crux of the breach of fiduciary duty claim, although they have overlapping facts;

• There is a fundamental difference between Thomas's malpractice claim, as pleaded, and the breach of fiduciary duty claim; and

• The key facts regarding the breach of fiduciary duty claim are that the fee agreement provides for a contingent fee, that the [Attorneys] did not satisfy the contingency. . ., that the [Attorneys] instructed Thomas to violate the [non-competes] in order to demand unearned fees, and that Thomas paid them. It is simply not the same claim as the malpractice claim. The claims have some overlapping facts, but they are not the same claim and not based on the same key facts.

The breach of fiduciary duty claim, as Thomas describes it, is that the Attorneys instructed him to violate non-compete agreements, which they had failed to overturn, for the purpose of insisting that Thomas pay them even though they had not achieved the fee contingency defeating the non-competes. However, these facts and this claim were not alleged until the third amended petition on November 15, 2010. Rather, the first three petitions were focused on the following: (1) the alleged failure of the Attorneys to add the produce distribution companies to the Dallas district court lawsuit; (2) the alleged failure to file the non-compete claims in arbitration as required by the employment agreements; and (3) the alleged failure to move to compel arbitration in the Pennsylvania case. Thus, on the face of the pleadings, the breach of the fiduciary duty claim is wholly based upon and grows out of a new, distinct, or different transaction or occurrence than the legal malpractice claim. *See Meisler*, 758 S.W.2d at 881. That, in combination with Thomas's admission that the breach of fiduciary duty claim is grounded in a different set of facts than the legal malpractice claim, leads us to conclude Thomas failed to raise a genuine issue of material fact as to whether the breach of fiduciary duty allegations relate back to the filing of any of the prior petitions. *See Sanders v. Construction Equity, Inc.,* 42 S.W.3d 364, 369 (Tex. App.—Beaumont 2001, pet. denied) (holding defects asserted in second amended pleading do not relate back to the timely-filed initial pleading).

*Continuous Tort*

Thomas next argues the trial court erred because the Attorneys did not conclusively prove the breach of fiduciary duty claim accrued in September 2006. Specifically, Thomas contends that because the Attorneys made continuing demands on him for payment, his cause of action did not accrue until the tortious conduct ended. *See Krohn v. Marcus Cable Assoc.*, L.P., 201 S.W.3d 876, 880 (Tex. App.—Waco 2006, pet. denied). Thomas argues that the Attorneys' breach of fiduciary duty was a continuous tort that lasted until the date of his last payment on August 13, 2007, which is less than four years prior to his filing the claim on November 15, 2010.

The Attorneys argue, however, that the continuing tort doctrine applies to delay the accrual of a cause of action only when there is repeated injury proximately caused by repetitive wrongful or tortious actions, but not when there is continuing injury arising from one wrongful act. *See id.* (citing *Rogers v. Ardella Veigel Inter Vivos Trust No. 2*, 162 S.W.3d 281, 290 (Tex. App.—Amarillo 2005, pet. denied). Here, the alleged wrongful advice to compete occurred in the summer of 2005.

Further, the Attorneys contend that the continuing tort doctrine is rooted in a plaintiff's inability to know ongoing conduct is causing his injury; thus, the rationale for the doctrine no longer applies if the claimant has discovered his injury and its cause and the statute commences to run upon discovery. *Markwardt v. Texas Indus., Inc.*, 325 S.W.3d 876, 894 (Tex. App.—Houston [14th Dist.] 2010, no pet.). The Attorneys argue, and we agree, the summary judgment record shows Thomas knew the terms of his engagement agreement by March 30, 2005, was aware of the terms of the non-competes prior to then, knew he was paying fees by September 2006, and these facts placed Thomas on notice of his alleged injury by September 2006 at the

latest. Thus, we conclude Thomas did not raise a genuine issue of material fact regarding whether the statute of limitations was deferred by the continuing tort doctrine. *See id.*

*Fraudulent Concealment*

Finally, in an effort to raise a fact issue, Thomas argued the Attorneys fraudulently concealed their breach of fiduciary duty and were estopped from relying on the statute of limitations as an affirmative defense to his claim. In particular, Thomas contends the claim was tolled because the Attorneys fraudulently concealed their breach by expressly telling him that the fee agreement was not contingent as late as March 23, 2007.

The elements of fraudulent concealment are: (1) existence of the underlying tort, (2) the defendant's knowledge of the tort, (3) the defendant's use of deception to conceal the tort, and (4) the plaintiff's reasonable reliance on the deception. *Vial v. Gas Solutions, Ltd.*, 187 S.W.3d 220, 229 (Tex. App.—Texarkana 2006, no pet.). Where a defendant is under a duty to make disclosure but fraudulently conceals the existence of a cause of action from the party to whom it belongs, the defendant is estopped from relying on the defense of limitations until the party learns of the right of action or should have learned thereof through the exercise of reasonable diligence. *Borderlon v. Peck*, 661 S.W.2d 907, 908 (Tex. 1983). The estoppel effect of fraudulent concealment ends when a party learns of facts, conditions, or circumstances which would cause a reasonably prudent person to make inquiry, which, if pursued, would lead to discovery of the concealed cause of action. *Id.* at 909.

Thomas has failed to raise a fact issue that the Attorneys concealed his cause of action. Rather, the summary judgment evidence established that Thomas was aware of the terms of the engagement letter on March 30, 2005, knew the terms of the non-compete agreements in 1998, and was aware he was paying the Attorneys by September 10, 2006.

In sum, Thomas did not raise a genuine issue of material fact that the breach of fiduciary duty claim he first asserted on November 15, 2010: (1) relates back to the prior petitions filed in this case, (2) was a continuous tort, or (3) was fraudulently concealed. Thus, we conclude the trial court did not err when it ruled that Thomas's claim for breach of fiduciary duty is barred by the four year statute of limitations. *See* TEX. CIV. PRAC. & REM. CODE ANN. §16.004(a)(5). The Attorneys were entitled to summary judgment as a matter of law on Thomas's claim for breach of fiduciary duty. *See Nixon*, 690 S.W.2d at 548. We overrule appellant's second issue.

## Conclusion

Having overruled Thomas's two issues on appeal, we affirm the judgment of the trial court.

111615F.P05

/David L. Bridges/
DAVID L. BRIDGES
JUSTICE



# Court of Appeals
# Fifth District of Texas at Dallas

## JUDGMENT

STUART THOMAS, Appellant

No. 05-11-01615-CV        V.

CARNAHAN THOMAS, LLP,
FREDERICK HOELKE, ROY ROMO, &
WILLIAM PETERS, Appellees

On Appeal from the 68th Judicial District
Court, Dallas County, Texas
Trial Court Cause No. DC-09-11220-C.
Opinion delivered by Justice Bridges.
Justices Moseley and Lang-Miers
participating.

In accordance with this Court's opinion of this date, the judgment of the trial court is
**AFFIRMED**.

It is **ORDERED** that appellees CARNAHAN THOMAS, LLP, FREDERICK HOELKE,
ROY ROMO, & WILLIAM PETERS recover their costs of this appeal from appellant STUART
THOMAS.

Judgment entered February 4, 2014

/David L. Bridges/

DAVID L. BRIDGES
JUSTICE